UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
DARRELL SMITH, on behalf of himself        :
Individually and all others similarly situated,    :
:
:        08 Civ. 0498 (DAB)(KNF)
Plaintiff,        :
:
v.        :
:
PIONEER CREDIT RECOVERY, INC.,        :
:
Defendant.        :
------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Defendant, Pioneer Credit Recovery, Inc. ("Pioneer"), moves to dismiss

plaintiff's Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). Contrary to

plaintiff's claims, the three letters he purportedly received from Pioneer, dated May 13, 2007,

June 13, 2007, and July 13, 2007 (the "Letters"), did not violate the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"). The Letters properly and clearly state

the name of the creditor and the current amount of the debt; do not threaten immediate

litigation; and, even if they did, contrary to plaintiff's assertion, Pioneer was legally able to

institute such litigation. As a matter of law and fact, the Letters did not, in any way, violate the

FDCPA, and, accordingly, this Court should dismiss plaintiff's Complaint with prejudice.

## STATEMENT OF FACTS

Facts relevant to this motion are set forth in the Affidavit of Andrew Kouroupos, sworn to March 10, 2008 (the "Kouroupos Aff.") and the Affidavit of Brian K. Gallagher, sworn to March 10, 2008 (the "Gallagher Affidavit"), submitted herewith.

## STANDARD OF REVIEW

This Court should dismiss the plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because, "drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief." Kuhne v. Midland Credit Management, Inc., 2007 WL 2274873, at * 1 (S.D.N.Y. Aug. 09, 2007) (copy annexed hereto) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)). Furthermore, because plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference, the Court is not required to accept them. Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2000).

Rule 12(b)(6) motions are not limited to the facts alleged in the complaint. A court may consider documents that are attached to, incorporated by reference in, or integral to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Rios v. Pinnacle Financial Group, Inc., 2006 WL 2462899, at *2, n.1 (S.D.N.Y. Aug. 23, 2006) (copy annexed hereto) (a court may consider debt collection letters when reviewing FDCPA claims based upon those letters). In addition, a court may consider documents either in plaintiff's possession, or of which plaintiff had knowledge, and relied on in bringing suit. Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). A court may also consider matters that are subject to judicial notice or part of the public record. Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

In addition, when evaluating allegations of FDCPA violations, courts apply an objective standard based on the "least sophisticated consumer." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). This standard requires the Court to determine how the "least sophisticated consumer" would interpret the debt collection letter. The Second Circuit explained that this standard "protects the naïve and the credulous," but "the courts have carefully preserved the concept of reasonableness." Id. "[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. Additionally, the FDCPA "protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." Id. at 1320. As described more fully below, under the "least sophisticated consumer standard," plaintiff cannot, as a matter of law, reasonably allege that Pioneer committed any violations of the FDCPA.

### ARGUMENT

### POINT I

### PIONEER'S DEBT COLLECTION LETTERS PROPERLY AND CLEARLY IDENTIFY THE CREDITOR

For his first claim, plaintiff alleges that Pioneer violated § 1692g(a)(2) of the FDCPA because it did not properly identify, in the Letters, the name of the creditor to whom the debt is owed. See Complaint, ¶¶ 6 and 7, annexed as Exhibit A to the Gallagher Affidavit. Notably, plaintiff does not allege how and in what way Pioneer did not properly identify the creditor. This Court is not required to and, indeed, should not, accept plaintiff's conclusory allegations. Matusovsky, 186 F. Supp. 2d at 400.

3

As an initial matter, as evidenced by plaintiff's loan application and the promissory note for the loan, the only creditor identified is SLM Financial Corporation ("SLM Financial"). See Kouroupos Aff. ¶¶ 2 - 4. The Letters clearly identify the creditor as SLM Financial by placing the name "SLM Financial" immediately following the word "Creditor" at the top of the first page and either at the bottom of the first page or on the second page, depending on the letter at issue. Copies of the Letters are attached as Exhibits 1, 2 and 3 to the Complaint. There is nothing else in the Letters that refers to any other entity as the creditor, or would otherwise confuse anyone, including the "least sophisticated consumer."

Where, as here, the collection letter properly identifies the creditor and provides no other information to contradict the identification, courts find that the debt collector did not violate the FDCPA. For example, in Hernandez v. The Affiliated Group, Inc., 2006 WL 83474 (E.D.N.Y. Jan. 12, 2006) (copy annexed hereto), the court found that the letter at issue properly identified the creditor where the letter stated name of creditor on the back of the letter and nothing on the front of the letter contradicted that information. Similarly, in Quicho v. Mann Bracken, LLC, 2007 WL 2782971 (N.D. Cal. Sept. 25, 2007) (copy annexed hereto), the letter stated the name of the creditor under the caption "Name of Creditor," and the letter did not mention that any other entity was the creditor. In both Hernandez and Quicho, the court held that the letters did not violate § 1692g(a)(2) of the FDCPA.

The Letters at issue here are no different than the letters in Hernandez and Quicho. They clearly identify the creditor as SLM Financial and no one else. Accordingly, as a matter of law, this Court should dismiss plaintiff's first claim for relief.

## POINT II

### THE LETTERS DO NOT CONTAIN AN IMMEDIATE THREAT OF LITIGATION OR MAKE FALSE CLAIMS ABOUT PIONEER'S ABILITY OR INTENTION TO COMMENCE LITIGATION AGAINST PLAINTIFF

In his second and third claims, plaintiff alleges that Pioneer violated §§ 1692e(5) and 1692e(10) of the FDCPA, in the June 13, 2007 letter (the "June 2007 Letter"), by threatening to litigate against plaintiff when it was not legally able to do so and had no intention of doing so. See Complaint, ¶¶ 9, 10, 12 and 13. Thus, for both claims, plaintiff must first be able to reasonably allege that the June 2007 Letter contained a threat of immediate litigation against the debtor. Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128, 134 (E.D.N.Y. June 29, 2007) (the threat must be of "immediate, imminent, or urgent" litigation). As shown more fully below, the June 2007 Letter makes no such threat, and this Court should dismiss both the second and third claims on that basis.

Only if a court finds that the debt collector has made a threat of immediate litigation does it consider whether or not the debt collector was legally able to bring suit or had intended to bring suit. Larsen v. JBC Legal Group, P.C., ____ F. Supp. 2d ___, 2008 WL 380425, at *7 (E.D.N.Y. Feb. 12, 2008) (copy annexed hereto).

### A.    The Letters Do Not Threaten Immediate Litigation Against Plaintiff

The mere mention that litigation is being considered as an option, does not permit the "least sophisticated consumer" to reasonably believe that litigation is immediately forthcoming, particularly when the communication is not from an attorney. Gervais v. Riddle & Assocs., 479 F. Supp. 2d 270, 275 (D. Conn. 2007); see also Madonna v. Academy Collection Service, Inc., 1997 WL 530101, at *7 (D. Conn. Aug. 12, 1997) (copy annexed

hereto) (letter stating that creditor "may pursue legal action" did not threaten immediate legal action); Knowles v. Credit Bureau of Rochester, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992) (copy annexed hereto) (finding that the statement, "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever").

In addition, the statement that the debt collector will pursue all its options does not violate the FDCPA. Spira v. Ashwood Fin., Inc., 358 F. Supp. 2d 150, 160 (E.D.N.Y. 2005). In Spira, the letter said that the debt collector intended "to pursue collection of [the] debt through every means available." Spira, 358 F. Supp. 2d at 160. The court held that this was not a threat that the debt collector could not make. Id.

The June 2007 Letter states, "this [letter] serves as notice of our intent to evaluate your account for possible litigation." As the courts held in Gervais, Madonna, and Knowles, this is not a threat of immediate litigation against the plaintiff. Merely stating that litigation is an option cannot, as a matter of law, lead even a "least sophisticated consumer" to reasonably conclude that Pioneer was going to pursue immediate litigation against him. Dewees, 506 F. Supp. 2d at 134. This is especially the case where, as here, the letter is not from an attorney. Gervais, 479 F. Supp. 2d at 275.

The two remaining statements in the June 2007 Letter, "We are entitled to use, and we intend to use, all approved means at our command to collect the debts that have been referred to us" and "If we do not hear from you within ten (10) days of the date of this notice, we will presume that you do not intend to honor this debt voluntarily, and we will have no alternative but to pursue an immediate resolution to this matter," which appears later in the letter, do not refer to litigation whatsoever, and are merely statements that Pioneer will pursue whatever options are available to it. As held by the court in Spira, such a statement does not

violate the FDCPA. <u>Spira</u>, 358 F. Supp. 2d at 160.

   As a matter of law, plaintiff has no basis to allege that the June 2007 Letter contains a threat of immediate litigation against him. Accordingly, this Court should dismiss plaintiff's second and third claims for relief. Even if, <u>arguendo</u>, this Court were to find that the Letters made an immediate threat of litigation (which is not the case), plaintiff, in order to sustain his second and third claims for violation of the FDCPA, must also be able to allege and prove that Pioneer was unable to take such action and never intended to take such action.[1]

**B. Pioneer Was Legally Able to**
  **Bring Suit Against Plaintiff on the Loan**

   Plaintiff's allegation that Pioneer was not legally able to bring suit, because the statute of limitations on its claim had run, is false as matter of law. The statute of limitations for breach of the loan agreement is six years. <u>See</u> N.Y. C.P.L.R. § 213. Because the loan was payable in installments (<u>see</u> Kouroupos Aff. at ¶ 5), separate causes of action accrued as installments of loan indebtedness become due and payable. <u>Phoenix Acquisition Corp. v. Campcore, Inc.</u>, 81 N.Y.2d 138, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (1993).

   Plaintiff was required to begin making payments on November 4, 2000. Kouroupos Aff. at ¶ 5. Plaintiff made the requisite monthly payments on the loan through June 4, 2001. <u>Id</u>. at ¶¶ 5 – 6. Plaintiff then requested and was granted a two-month deferment, and was not required to make any monthly payments in July or August 2001. <u>Id</u>. at ¶¶ 7 – 9. Plaintiff made his final payment on September 25, 2001, but the payment was late, and brought his loan current as of September 4, 2001. <u>Id</u>. at ¶ 10. Plaintiff failed to make his next payment that was due on October 4, 2001. Thus, the earliest plaintiff could have defaulted is October 4, 2001, when he failed to make his next required monthly payment. <u>Id</u>. at ¶ 11. Accordingly, the

---

[1] Even if the letter may have threatened immediate legal action, the plaintiff must still prove that Pioneer did not intend to review plaintiff's account for legal action. <u>Larsen</u>, 2008 WL 380425, at *7.

earliest that the statute of limitations could have begun to run on an action for nonpayment was October 4, 2001, which would not have expired until October 4, 2007. The June 2007 Letter, almost four months prior to October 4, 2007, was clearly within the statute of limitations period and plaintiff, as a matter of law, cannot claim that Pioneer was not legally able to bring suit against him.

## POINT III

### PIONEER'S LETTERS PROPERLY AND CLEARLY STATE THE CURRENT AMOUNT OF THE DEBT

In his fourth claim, plaintiff alleges that Pioneer did not properly state the amount of the debt, in violation of § 1692g(a)(1) of the FDCPA. See Complaint, ¶¶ 16 and 17. A simple review of the Letters proves that Pioneer clearly stated the current amount of the debt plaintiff owed to SLM Financial.

The Letters state the "current balance" is "$5928.72." The Letters further confirm the amount of the debt by stating that "[a]s of the date of this letter, you owe the balance shown on this letter. Because your credit agreement may require you to pay interest on the portion of your balance, as well as late charges and costs of recovery, which vary from day to day, as you agreed in your credit agreement, the amount required to pay your account in full on the day you send payment may be greater than the amount stated here." See Complaint, Exhibits 1, 2 and 3.

As the Seventh Circuit recognized in Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000), it is difficult to communicate the current amount of the debt when the amount changes over time due to interest, fees, and the like. The amount of the debt on the date the letter is sent to the debtor may be more than the

amount when the debtor receives it. Miller, 214 F.3d at 875-76. Accordingly, in order for the debt collector to comply with the FDCPA, the Seventh Circuit fashioned "safe harbor" language that the debt collector should include for cases, such as the case here, where the amount of the debt varies from day to day. The safe harbor provision is as follows:

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800- [phone number].

Miller, 214 F.3d at 876.

The language in the Letters is almost identical to the "safe harbor" language drafted by the Seventh Circuit in Miller. Accordingly, Pioneer properly and clearly stated the current amount of the debt on the letters and this Court should dismiss plaintiff's fourth claim for violation of § 1692g(a)(1) of the FDCPA.

## CONCLUSION

For all the foregoing reasons, this Court should grant Pioneer's motion to dismiss plaintiff's Complaint with prejudice and for all such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      March 10, 2008

GALLAGHER, HARNETT & LAGALANTE LLP
Attorneys for Defendant
Pioneer Credit Recovery, Inc.

By: _____
Brian K. Gallagher (BG 6377)
(A Member of the Firm)
380 Lexington Avenue, Suite 2120
New York, New York 10168
(212) 983-9700

# UNREPORTED DECISIONS

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2274873 (S.D.N.Y.)
(Cite as: Slip Copy)

**C**
Kuhne v. Midland Credit Management, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Paul KUHNE, on behalf of himself and all others
similarly situated, Plaintiff,
v.
MIDLAND CREDIT MANAGEMENT, INC. and
Midland Funding NCC-2 Corp., Defendants.
No. 06 Civ. 5888(DC).

Aug. 9, 2007.

Bromberg Law Office, P.C., by: Brian L.
Bromberg, Esq., New York, NY, Lance A. Raphael,
Esq., Stacy M. Bardo, Esq., Chicago, Il, for Plaintiffs.
Pino & Associates, LLP, by: Thomas E. Healy,
Esq., White Plains, NY, for Defendants.

### MEMORANDUM DECISION

CHIN, D.J.
    *1 On or about August 4, 2005, defendant Midland Credit Management, Inc. ("Midland"), sent
plaintiff Paul Kuhne, a New York resident, a debt
collection letter informing him that he owed Midland $3,204.84 for an outstanding debt that Midland
had purchased from one of Kuhne's creditors. The
letter was addressed to Kuhne at an address in Massachusetts, apparently his parents' residence. The
letter advised Kuhne that if he took advantage of
Midland's "Interest Free Program" by paying
$2,517.41-the "Pay Only Principle [sic] Balance"-within 29 days, he could save the current interest amount of $687.43. Kuhne alleges that Midland's letter contained false and deceptive representations because it failed to disclose that the settlement amount offered already included interest,
though it claimed that the program was "interest
free."

    Kuhne filed his class action complaint on Au-

gust 3, 2006. He sues on behalf of himself and "a
statewide class" consisting of "all consumers, who
according to Defendants' records, had a New York
address and: (a) within one year before the filing of
this action; (b) were sent a collection letter in a
form materially identical or similar to the letter sent
to the Plaintiff on or about August 4, 2005 ... and;
(c) the letter was not returned by the postal service
as undelivered. (Compl. ¶ 26; *see id.* Ex. A). Kuhne
alleges that Midland is liable for deceptive practices in violation of the Fair Debt Collection Practices Act (FDCPA"), 15 U.S.C. § 1692 *et seq.*

    On December 11, 2006, Midland filed an answer to the complaint. On March 9, 2007, Midland
moved for judgment on the pleadings pursuant to
Fed.R.Civ.P. 12(c), contending that Kuhne's complaint fails to plead specific facts that would entitle
him to act as a representative of the proposed class.
For the reasons that follow, the motion is granted.

### DISCUSSION

    A motion for judgment on the pleadings under
Fed.R.Civ.P. 12(c) is analyzed under the same
standard as a motion to dismiss for failure to state a
claim under Fed.R.Civ.P. 12(b)(6).*See Sheppard v.
Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Accordingly, judgment on the pleadings is appropriate
only if, drawing all reasonable inferences in favor
of the non-moving party, it is apparent from the
pleadings that no set of facts can be proven that
would entitle the plaintiff to relief. *See id.* The well-pleaded factual allegations of the complaint are assumed to be true and "all contravening assertions in
the movant's pleadings are taken to be false."5C
Charles Alan Wright & Arthur R. Miller, *Federal
Practice and Procedure* § 1368 (3d ed.2004).

    In deciding a motion for judgment on the
pleadings, a court may consider the pleadings and
exhibits or documents incorporated by reference, as
well as matters subject to judicial notice. *See Pren-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*tice v. Apfel,* 11 F.Supp.2d 420, 424 (S.D.N.Y.1998) (citing *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993)). Where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference, however, the court is not required to accept them. *See Matusovsky v. Merrill Lynch,* 186 F.Supp.2d 397, 400 (S.D.N.Y.2000).

   *2 Midland moves for judgment on the pleadings on the grounds that Kuhne is not a member of the class that he purports to represent. The putative class defined in the complaint consists of "a statewide class ... consisting of all consumers, who *according to Defendants' records,* had a New York address."(Compl.¶ 26) (emphasis added). Kuhne alleges that he is a citizen of New York and resides in the Southern District of New York, but he does not allege that he had a New York address according to Midland's records. Indeed, the notice in question was sent to Kuhne at a Massachusetts address. Although the Court is not bound by the class definition proposed in the complaint, *see Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993), Kuhne must be a member of the putative class to bring a class action. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (holding that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U .S. 395, 403 (1977)); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) ("[W]e affirm the district court's denial of Baffa's motion for certification because he is not a member of the class."); 7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1761 (3d ed.2004) (explaining that prerequisite to bringing class action is that named representative be a member of class that party purports to represent).

   Kuhne alleges that he is a resident of New York, and argues in his opposition papers that he had a New York address according to Midland's re-

cords. (Kuhne Opp. at 4). On a motion for judgment on the pleadings, however, the Court may only consider the pleadings and any exhibits incorporated by reference. *See Prentice,* 11 F.Supp.2d at 424. Kuhne has not alleged in the complaint that he has a New York address according to defendant's records. To the contrary, the exhibit to the complaint-the letter-shows that according to defendant's records, Kuhne had a Massachusetts address.

   Kuhne also argues that he actually received the letter in New York, as he contends that the letter was forwarded from Massachusetts to him in New York. But these facts are not alleged in the complaint, and even assuming they were, Kuhne still does not fit within the definition of the class as alleged in the complaint.

   Accordingly, Midland's motion is granted, and the complaint is dismissed. If Kuhne wishes to pursue this action, he must amend his complaint within 30 days hereof, setting forth specific facts demonstrating that he is a member of the putative class.

   SO ORDERED.

S.D.N.Y.,2007.
Kuhne v. Midland Credit Management, Inc.
Slip Copy, 2007 WL 2274873 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
(Cite as: Slip Copy)

▷
Rios v. Pinnacle Financial Group, Inc.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Victor RIOS, on behalf of himself and all others
similarly situated, Plaintiff,
v.
PINNACLE FINANCIAL GROUP, INC., Defend-
ant.
No. 05 Civ. 10290(SHS).

Aug. 23, 2006.


OPINION

STEIN, J.
    *1 The Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. §§ 1692-1692o, requires
debt collectors to provide a consumer debtor with a
notice setting forth certain rights the debtor pos-
sesses. These rights include the right to dispute the
validity of the debt and to require the debt collector
to obtain verification of the debt and then mail a
copy to the debtor. Plaintiff Victor Rios, suing on
behalf of an unspecified class, claims that a debt
collection letter sent to him by defendant Pinnacle
Financial Group, Inc., a debt collection agency, vi-
olated this mandate by misleadingly masking in-
formation regarding his right to request validation
of the debt in lieu of paying immediately. Rios con-
tends that the substance of the letter implied that he
had no choice but to pay the alleged debt and that
the letter's format similarly disguised information
regarding his rights.

    Defendant has now moved to dismiss the com-
plaint, claiming that Rios has not stated a claim
upon which relief can be granted. Having closely
examined Rios's complaint and the debt collection
letter itself, the Court concludes that that letter does
not violate the FDCPA and therefore that Rios's
claim, based as it is upon that letter, must be dis-

missed.

I. Background

    The facts as set forth in the complaint are as
follows:

    At some point prior to July 19, 2005, Rios's
past due account at Citibank was given to Pinnacle
for collection. (Complaint ¶¶ 9-10.) On July 19,
Pinnacle sent Rios a debt collection letter. (Id. ¶
10.)A copy of the letter is attached to Rios's com-
plaint and is also appended to this Opinion. The top
portion of the letter contains information regarding
how to pay the outstanding balance and is to be de-
tached by the recipient and returned with payment.
In the middle of the letter, underneath a banner
labeled "YOUR ACCOUNT HAS BEEN RE-
CEIVED FOR COLLECTION," the following is
written:

    Dear VICTOR RIOS:

    Please be advised that the below referenced
claim has been placed with us for collection by AT-
LANTIC CREDIT & FINANCE, which has ac-
quired a CITIBANK portfolio, and as such, my firm
is handling the collection of your CITIBANK (sic).

    Below this appear the words "Here is what you
can do next," succeeded by a box containing three
options:

    1. Detach the upper portion of this letter and
return with payment using the enclosed envelope.

    OR

    2. Please contact our office at 1-800-603-9465
to explore the options that are available to you.

    OR

    3. You may use any of the following services
to pay:

    Below that appear five icons, including three
credit card icons, a Western Union icon and a
"Check by Phone" icon. At the bottom of the letter
is a large box containing Rios's Citibank account
information. Below that box are Pinnacle's hours of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

operation, and below the hours, in capital letters as large as any on the page, is the phrase "NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION."The reverse side consists of four paragraphs of type, including one regarding the debtor's right to dispute the validity of the debt within 30 days and thereby require Pinnacle to obtain verification of the debt and mail a copy to the consumer debtor.

**\*2** After receiving this letter, Rios filed the present action, which defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. Legal Standard

The Court can grant a Rule 12(b)(6) motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 171 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (quotation marks omitted). In reviewing a motion to dismiss, the court must treat all of the factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999). In resolving the motion, the Court can examine the contents of the complaint as well as documents attached to it.[FN1]*Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996).

> FN1. Rios contends that because his complaint claims that he received a debt collection letter that violated the requirements of the FDCPA, he has stated a claim that therefore cannot be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). However, the Court can consider the attached collection letter itself to determine whether that letter-the

very subject of Rios's entire complaint-violates the FDCPA and accordingly whether Rios has stated a legal claim. Indeed, it is not uncommon for district courts to resolve such FDCPA claims as this one pursuant to Rule 12(b)(6).*See,e.g.,Foti v. NCO Fin. Sys.,* 424 F.Supp.2d 643, 666 (S.D.N.Y.2006); *Omogbeme v. Risk Mgmt. Alternatives, Inc.,* No. 01-Civ.-7571, 2003 U.S. Dist. LEXIS 25781, at \*10 (S.D.N.Y. Aug. 4, 2003).

Pinnacle has moved in the alternative for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), which "permit[s] the summary disposition of cases that do not involve any substantive dispute that justifies trial."*Fortunet v. Chater,* No. 94 Civ. 8274, 1996 U.S. Dist. LEXIS 5655, at \*1 (S.D.N.Y. April 30, 1996) (citing 5A Alan Wright & Arthur Miller, Federal Practice and Procedure § 1369). Since the standards employed in disposing of a Rule 12(c) motion are the same as those employed pursuant to Fed.R.Civ.P. 12(b)(6), *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994), the analysis below would be the same were the Court to consider this motion pursuant to Rule 12(c) instead of Rule 12(b)(6).

### B. Plaintiff's FDCPA Claim

Section 1692g of the FDCPA governs the legal responsibilities of collection agencies in notifying debtors about the nature of their debt. 15 U.S.C. § 1692g. Specifically, collection agencies must send the consumer a written notice containing (i) the amount of the debt; (ii) the name of the creditor to whom the debt is owed; (iii) a statement that the debt's validity can be disputed by the consumer within 30 days and that if the consumer does not so, it will be presumed; (iv) a statement that, if the consumer disputes the validity of the debt, the agency will obtain verification of the debt and mail a copy of the verification to the consumer; and (v) a statement that, if requested, the agency will provide the consumer with the name and address of the original creditor. *Id.;seealsoRussell v. Equifax A.R.S.,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 3

74 F.3d 30, 33 (2d Cir.1996).

Section 1692(e), which prohibits the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt" applies to the requirements of section 1692g. *See*15 U.S.C. § 1692e; *Sorey v. Computer Credit, Inc.,* No. 05 Civ. 6052, 2006 U.S. Dist. LEXIS 46618, at *2-3 (S.D.N.Y. July 7, 2006). In other words, a debt collection agency cannot supply the information required by section 1692g in a false or misleading fashion.

In applying these rules, the United States Court of Appeals for the Second Circuit has held that sections 1692g and 1692e are violated when the "least sophisticated consumer" would not understand the information supplied him. *See*Russell, 74 F.3d at 34. Specifically, when a collection communication contains language that "overshadows or contradicts" the information regarding debtors' rights, the letter will confuse the least sophisticated debtor and therefore violates the FDCPA. *Id.* at 34 (citing *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991)). A notice is "overshadowing" or "contradictory" "if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights."*Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998).

**\*3** Pinnacle asserts that the letter it sent Rios, containing as it did the requisite debtors' rights information, was not misleading. Rios, on the other hand, alleges that the information regarding his rights-and in particular his right to request validation of the debt-is "overshadowed" in form and substance by the remainder of the letter. Specifically, Rios notes that the front of the letter employs different fonts, as well as several corporate icons representing payment options which, he claims, distract the reader from the reference at the bottom of the page to the letter's reverse side, which contains the statement that he has the right to contest the validity of the debt.

In addition, he points out, the validation notice does not appear on the reverse side until the second paragraph of a lengthy passage, which Rios contends amounts to a "further manifestation of defendant's intentional and conscious effort to overshadow and contradict the plaintiff's important rights."(Plaintiff's Response to Motion to Dismiss dated Feb. 14, 2006, at 8.) Finally, the complaint alleges that the letter is substantively misleading because none of the three options for the consumer listed on the front side refer to the consumer's right to request validation of the debt prior to being required to pay it.

*C. Analysis*

The letter at issue is substantially less deceptive or manipulative in form and format than those that courts have found to violate the FDCPA. For example, in *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086 (W.D.N.Y.1992), which Rios cites, the notice directing the reader to the reverse side was set in smaller typeface than the remainder of the letter, including the large block-lettered payment information; additionally, the letter was perforated and the two notices-one directing the reader to the reverse side and the other, on the reverse side itself, containing validation information-were on different sides of the perforation. *Id.* at 1093-94.Similarly, in *Miller v. Payco-General American Credits, Inc.,* 943 F.2d 482 (4th Cir.1991), which Rios also relies on, the letter purposefully accentuated the words "immediate payment" by placing them in two-inch tall lettering.*Id.* at 484.And in *Ost v. Collection Bureau, Inc.,* 493 F.Supp. 701 (D.N.D.1980), the front of the letter did not state that information was located on the reverse side, and the information regarding debtors' rights was printed in smaller typeset than the remainder of the letter. *Id.* at 702-03.

Here, on the other hand, the language in Pinnacle's letter directing Rios to the reverse side is printed at least as large as any other language on the page, and is accented in capitals. The validation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 4

notice is similarly printed as large as is all other information on that page. And the information regarding payment options is not bolded or italicized in any manner that stands out when contrasted with the information regarding debtors' rights. That the latter information appears on the reverse side does not, on its own, violate the FDCPA. See *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 310 (2d Cir.2003). Finally, Pinnacle's decision to place credit card and payment icons on the letter does not prevent even the least sophisticated reader from recognizing that there is important information on the back.

*4 The substance of the letter similarly does not overshadow the information regarding Rios's right to require Pinnacle to verify the validity of the debt. The front of the letter advises Rios that his account has been placed for collection and notes methods of paying the debt; it then directs the reader to "important consumer information" on the reverse side, where the validation information can be found.

The complaint alleges that the letter implies that the debt must be paid regardless of the debtor's right to request validation because after noting "here is what you can do next" on the front, Pinnacle prints only three options, all dealing with payment and none of which mention the right to obtain validation of the debt. In *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292 (2d Cir.2003), however, the Second Circuit found that a similar collection letter did not violate the FDCPA. The panel in *Miller* noted that "[w]hile the options detailed on the bottom of the letter do not include requesting validation of the debt," the notice directing the reader to the reverse side, in large print and capital letters, was sufficient to apprise the reader of his right to seek validation before payment, especially because the letter did not suggest that immediate payment was necessary.[FN2] *Id.* at 310. Similarly, Pinnacle's list of payment options on the front side of the letter is insufficient to overshadow the validation information on the backside, since the re-

cipient is directed to "see reverse side" for "important consumer information."

> FN2. It is true that the letter in *Miller* informed the reader to turn the page "before responding to this letter," whereas the letter at issue here only notes that "important consumer information" is located on the reverse side. While the *Miller* language is preferable, the "lease sophisticated consumer" here was sufficiently alerted to the existence of important information on the reverse side such that he could be expected to read it before paying the debt.

This is especially so given that the payment options were preceded by the phrase "here is what you can do next," which does not demand immediate payment or threaten legal action if payment is not forthcoming. *Cf.Savino,* 164 F.3d at 86 ("[Defendant's] violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1692g to seek validation of the debt ."); *Barlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses."); *Foti v. NCO Fin. Sys.,* 424 F.Supp.2d 643, 662 (S.D.N.Y.2006) (noting that "a number of cases have found violations of the FDCPA where a written notice includes the words 'immediate attention' or similar language suggesting an urgency to resolution of the debt"). Rather than demanding immediate payment, Pinnacle's letter simply presents options for payment while noting that the debtor has the right to seek validation within 30 days, which is fully in keeping with the dictates of 15 U.S.C. §§ 1692g and 1692e.

### III. CONCLUSION

As set forth above, the debt collection letter did

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
**(Cite as: Slip Copy)**

not violate the FDCPA in form or substance. Accordingly, Pinnacle's motion is granted and the complaint should be dismissed.

APPENDIX

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 6

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 7
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*5 When you provide a check, you authorize its either to use information from your check to make a one-time electronic fund transfer from your account or to process this transaction as a check. When we use your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the date written on the check and you will not receive your check back from your financial institution.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after reviewing this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

This letter is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. This collection agency is licensed by the State of Minnesota Department of Commerce.

This collection agency is licensed in New York City, License Number 1129611 under the trade name PFG of Minnesota.

S.D.N.Y.,2006.
Rios v. Pinnacle Financial Group, Inc.
Slip Copy, 2006 WL 2462899 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 2782971 (N.D.Cal.)
(Cite as: Slip Copy)

Quicho v. Mann Bracken, LLC
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Zenaida E. QUICHO, Plaintiff(s),
v.
MANN BRACKEN, LLC; Doug Mann; Edward
Reilly, Defendant(s).
No. C07-3478 BZ.

Sept. 25, 2007.

Irving L. Berg, The Berg Law Group, Corte
Madera, CA, Susanne B. Berg, Attorney at Law,
San Francisco, CA, for Plaintiff(s).
Alisha Marie Lee, Lewis Brisbois Bisgaard &
Smith, Brian Slome, Los Angeles, CA, for Defend-
ant(s).

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION TO DIS-
MISS**

BERNARD ZIMMERMAN, United States Magis-
trate Judge.
    *1 Defendants have filed a motion to dismiss
plaintiff's complaint pursuant to Fed.R.Civ.P.
12(b)(6).[FN1] For the reasons discussed, defendants'
motion is **GRANTED IN PART AND DENIED
IN PART.**

        FN1. All parties have consented to my jur-
        isdiction, including entry of final judg-
        ment, pursuant to 28 U.S.C. § 636(c) for
        all proceedings.

    The plaintiff's first cause of action alleges sev-
eral violations of the Fair Debt Collection Practice
Act ("FDCPA"). One claim is that defendants viol-
ated 15 U.S.C. § 1692e(3) by falsely representing in
a collection letter received by plaintiff that attor-
neys were directly or personally involved in re-
viewing plaintiff's file.[FN2] In moving to dismiss,
defendants argue that because an attorney did not

sign the letter and because the letter states that it is
from a debt collector, the "least sophisticated con-
sumer" would not misperceive the level of attorney
involvement.[FN3]

        FN2. A copy of the collection letter was at-
        tached to the complaint and is attached to
        this order.

        FN3. A motion to dismiss under Rule
        12(b)(6) should be granted only if
        plaintiff's complaint fails to set forth facts
        sufficient to establish a plausible right of
        recovery. *See Bell Atlantic Corp. v.
        Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955,
        1974, 167 L.Ed.2d 929 (2007). For pur-
        poses of such a motion, the complaint is
        construed in a light most favorable to the
        plaintiff and all properly pleaded factual
        allegations are taken as true. *Everest &
        Jennings, Inc. v. American Motorists Ins.
        Co.,* 23 F.3d 226, 228 (9th Cir.1994); *see
        also Mitan v. Feeney,* 2007 WL 2068106,
        at *9 (C.D.Cal.) (discussing the
        post-*Twombly* standard). In resolving a
        12(b)(6) motion, a court may consider ma-
        terials attached by plaintiff to his plead-
        ings. *See Canlas v. Eskanos & Adler, P.C.,*
        2005 WL 1630014 at *2 (N.D.Cal.) (citing
        *Durning v. First Boston Corp.,* 815 F.2d
        1265, 1267 (9th Cir.1997)).

    To determine if the FDCPA has been violated,
the language of the letter is judged by the "least
sophisticated debtor" standard. *Swanson v. South-
ern Oregon Credit Service, Inc.,* 869 F.2d 1222 (9th
Cir.1988). I cannot say as a matter of law that the
letter here, printed on defendants' letterhead identi-
fying defendants as "ATTORNEYS AT LAW," and
signed by "MANN BRACKEN, LLC", could not be
perceived as constituting the work of an attorney,
especially when there is no disclaimer indicating
otherwise. *See Greco v. Trauner, Cohen & Thomas,
L.L.P.,* 412 F.3d 360, 364 (2d Cir.2005); *see also*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Dupuy v. Waltman, Wienberg & Reis Co.,* 442 F.Supp.2d 822, 825 (N.D.Cal.2006). The second paragraph of the letter lists the numerous jurisdictions where "this firm" practices law, and states that the sender "intend[s] to pursue legal remedies". Although the letter states that it is from a "debt collector," that statement does not rule out the possibility that the letter is from an attorney, as attorneys can be debt collectors. *See, e.g., Greco,* 412 F.3d at 364;*Dupuy,* 442 F.Supp. at 825. For these reasons, defendants' motion is **DENIED** as to this claim.FN4

> FN4. Plaintiff's second cause of action is brought under the Robbins-Rosenthal Fair Debt Collection Practices Act ("RR FD-CPA"), Cal. Civ.Code § 1788.13(c), which prohibits the misrepresentation of attorney involvement in debt collection letters. At hearing, the parties agreed that a violation of the FDCPA would amount to a violation of the RR FDCPA. *See Dupuy,* 442 F.Supp.2d at 824. Thus, the state claim survives to the extent the federal claim survives.

Plaintiff also asserts that the letter does not clearly state the creditor's name, violating 15 U.S.C. §§ 1692e, 1692e(10) and 1692g, because the statement that the "original contract you entered into with Chase Bank USA N.A. or with the predecessor or assignor of Chase Bank USA N.A." would confuse the least sophisticated debtor as to whether the debt is held by Chase Bank USA, N.A., or some other creditor. Defendants argue that the name of the creditor is clearly identified in the caption of the letter and is not overshadowed or contradicted by the second paragraph because the "original contract" is only relevant to the legal rights included in the contract, not to the identification of the creditor.

I find that the creditor's name is clearly stated in the letter next to the caption "Name of Creditor". Although the beginning of the second paragraph states that another party may have been the con-

tracting party, this party is not identified as the "creditor," but only as a party who the debtor may have contracted with initially. Thus, the second paragraph is not relevant to the identification of the current creditor and does not contradict the plain fact that Chase Bank, USA, N.A. is identified as the creditor. *Cf. Sparkman v. Zwicker & Assocs., P.C.,* 374 F.Supp.2d 293, 300-301 (E.D.N.Y.2005) (identifying the creditor, but also indicating that the creditor could be some other entity). The identification is sufficiently clear and, as a matter of law, does not violate §§ 1692e, 1692e(10) or 1692g. For these reasons, defendants' motion as to this claim is **GRANTED.**

**\*2** Plaintiff further claims defendants violated 15 U.S.C. § 1692e(5) because they threatened arbitration when they could not legally do so. To find a violation of § 1692e(5), I must determine "(1) whether the debt collector threatened legal action, and, if so, (2) whether such action could legally be taken or whether the debt collector intended to take such action."*Irwin v. Mascott,* 112 F.Supp.2d 937, 950 (N.D.Cal.2000) (quoting *Newman v. Checkrite,* 912 F.Supp. 1354, 1379 (E.D.Cal.1995)). Here, the letter states: "If we are unable to reach satisfactory arrangements, the filing of an arbitration claim will be evaluated."The text goes on to make clear that legal action may follow in order to enforce any arbitration award. Defendants claim this language merely informed the debtor of the "possibility" of filing for arbitration and included no imminent threat of legal action.

The Ninth Circuit, however, has explained that the language of a debt collection letter can constitute a threat when it "create(s) the impression that legal action by defendant is a real possibility."*Baker v. G.C. Services Corp.,* 677 F.2d 775, 779 (9th Cir.1982). Thus, "an explicit statement or threat of legal action" is not required to establish a violation of § 1692e(5).*See Kreek v. Phycom Corp.,* 2007 WL 1229315 at *4 (N.D.Cal.) (analyzing a letter stating: "if you do not telephone, the Physician will *consider using* a collection

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2782971 (N.D.Cal.)
**(Cite as: Slip Copy)**

agency or civil action to pursue the debt.")
(emphasis added); *see also Palmer v. Stassinos,* 348
F.Supp.2d 1070, 1085 (N.D.Cal.2004) (analyzing a
letter stating: "Failure [to remit payment in full]
...*may necessitate* using other remedies to collect.")
(emphasis added).

The defendants here have used prospective lan-
guage similar to that found threatening in *Kreek*
and *Palmer,* including a clear threat to enforce any
arbitral award. For the least sophisticated debtor,
the letter could be viewed as conveying a "real pos-
sibility" of legal action. I cannot say as a matter of
law that the text does not constitute a threat under §
1692e(5).[FN5] Therefore, defendants' motion is
**DENIED** as to this claim.

> FN5. Whether defendants could legally file
> an arbitration claim or intended to do so is
> not ripe for adjudication, as neither party
> has introduced evidence on the issue and
> because such evidence would, in any
> event, require me to rely on facts outside
> of the pleadings. It is sufficient to note that
> plaintiff includes in the complaint an alleg-
> ation that defendants' threatened actions
> are not legally permissible. *See* Compl. ¶¶
> 13, 15, 20. Thus, plaintiff's allegation that
> defendants also violated § 1692e(2)(A) by
> falsely claiming the ability to seek arbitra-
> tion must also survive at this time.

It is therefore **ORDERED** that defendants' mo-
tion is **GRANTED** as to the claimed violations of
§§ 1692e, 1692e(10), and 1692g premised on the
theory that the collection letter did not clearly
identify the creditor. Defendants' motion is
**DENIED** as to the remainder of plaintiff's claims.

N.D.Cal.,2007.
Quicho v. Mann Bracken, LLC
Slip Copy, 2007 WL 2782971 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

**H**
Larsen v. JBC Legal Group, P.C.
E.D.N.Y.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Kimberly LARSEN f/k/a Kimberly Kaiser, on behalf of herself and all others similarly situated, Plaintiffs,
v.
JBC LEGAL GROUP, P.C. f/k/a JBC & Associates, P.C., JBC Legal Group, P.C. f/k/a JBC Associates, Inc., JBC & Associates, P.C., JBC Associates, Inc., Jack Boyajian, Marv Brandon a/k/a Marvin Brandon, and Outsource Recovery Management, Inc., Defendants.
No. CV 04-4409 (ETB).

Feb. 12, 2008.

**Background:** Consumer sued law firm, its owner, assignee of consumer's debt, and attorney for alleged violations of the Fair Debt Collection Practices Act (FDCPA), seeking statutory damages, attorney fees, and costs. Consumer moved for partial summary judgment.

**Holdings:** The District Court, E. Thomas Boyle, United States Magistrate Judge, held that:

(1) defendants failed to respond to consumer's motion, warranting summary judgment by default against them;

(2) defendants qualified as debt collectors under the FDCPA;

(3) debt collection letter constituted a threat of legal action;

(4) defendants threatened legal action that could not be taken and was a false representation;

(5) defendants attempted to collect from consumer an amount not expressly permitted by law;

(6) defendants failed to clearly convey amount of debt consumer allegedly owed; and

(7) genuine issue of material fact existed as to whether attorney was involved in debt collection efforts at issue.

Motion granted in part and denied in part.

**[1] Attorney and Client** 45 ⚖ 62

45 Attorney and Client
    45II Retainer and Authority
        45k62 k. Rights of Litigants to Act in Person or by Attorney. Most Cited Cases
The rules afforded pro se litigants are not relaxed when that litigant is also an attorney.

**[2] Antitrust and Trade Regulation** 29T ⚖ 213

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk213 k. Practices Prohibited or Required in General. Most Cited Cases

**Antitrust and Trade Regulation** 29T ⚖ 214

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Representations, and Notices; Debtor's Response. Most Cited Cases
A debt collection practice may violate the Fair Debt Collection Practices Act (FDCPA) even if it does not fall within any of the enumerated circumstances set forth in section of the FDCPA prohibiting the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and a single violation of that section is sufficient to establish civil liability under the FDCPA. Fair Debt Collection Practices Act, §§ 807, 813, 15 U.S.C.A. §§ 1692e, 1692k.

**[3] Antitrust and Trade Regulation 29T ⬅⮕214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
       29Tk210 Debt Collection
         29Tk214 k. Communications, Representations, and Notices; Debtor's Response. Most Cited Cases
The test for determining whether a collection notice violates the Fair Debt Collection Practices Act (FDCPA) is an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.

**[4] Antitrust and Trade Regulation 29T ⬅⮕216**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
       29Tk210 Debt Collection
         29Tk216 k. Knowledge and Intent; "Bona Fide Errors". Most Cited Cases
The Fair Debt Collection Practices Act (FDCPA) is a strict liability statute, and, accordingly, a consumer need not show intentional conduct by the debt collector to be entitled to damages. Fair Debt Collection Practices Act, § 813(a), 15 U.S.C.A. § 1692k(a).

**[5] Federal Civil Procedure 170A ⬅⮕2547.1**

170A Federal Civil Procedure

170AXVII Judgment
   170AXVII(C) Summary Judgment
      170AXVII(C)3 Proceedings
       170Ak2547 Hearing and Determina- tion
         170Ak2547.1 k. In General. Most Cited Cases
Debt collectors failed to respond to consumer's motion for partial summary judgment in consumer's action alleging violations of the Fair Debt Collection Practices Act (FDCPA), warranting summary judgment by default against debt collectors, where debt collectors were afforded adequate time to oppose the motion, but failed to do so. Fair Debt Collection Practices Act, § 802 et seq., 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.App.(2000 Ed.)

**[6] Antitrust and Trade Regulation 29T ⬅⮕212**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
       29Tk210 Debt Collection
         29Tk212 k. Persons and Transactions Covered. Most Cited Cases
Those who are assigned a defaulted debt are not exempt from the Fair Debt Collection Practices Act (FDCPA) if their principal purpose is the collection of debts or if they regularly engage in debt collection. Fair Debt Collection Practices Act, § 803(6), 15 U.S.C.A. § 1692a(6).

**[7] Antitrust and Trade Regulation 29T ⬅⮕212**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
       29Tk210 Debt Collection
         29Tk212 k. Persons and Transactions Covered. Most Cited Cases
President, secretary, and presumed owner of law

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

firm engaged in debt collection qualified as a debt collector under the Fair Debt Collection Practices Act (FDCPA), where he provided services to clients seeking to collect debts from consumers, and he had sole control over form of debt collection letters sent to consumers. Fair Debt Collection Practices Act, § 803(6), 15 U.S.C.A. § 1692a(6).

**[8] Antitrust and Trade Regulation 29T ⟜212**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
         29Tk210 Debt Collection
            29Tk212 k. Persons and Transactions Covered. Most Cited Cases
Assignee of consumer's debt was a debt collector under the Fair Debt Collection Practices Act (FDCPA), where its business was to purchase debts that were in default from other entities, and it used law firm exclusively as collector on debts that it purchased. Fair Debt Collection Practices Act, § 803(6), 15 U.S.C.A. § 1692a(6).

**[9] Antitrust and Trade Regulation 29T ⟜214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
         29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
Debt collection letter stating that consumer could be sued 30 days after date of letter if she did not make payment could have been reasonably inter- preted by least sophisticated consumer as advan- cing a threat of legal action, within meaning of Fair Debt Collection Practices Act (FDCPA) sections which prohibit debt collectors from threatening to take any action that cannot legally be taken or that was not intended to be taken, and prohibit use of

any false representation or deceptive means to col- lect or attempt to collect any debt. Fair Debt Col- lection Practices Act, § 807(5, 10), 15 U.S.C.A. § 1692e(5, 10).

**[10] Antitrust and Trade Regulation 29T ⟜ 214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
         29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
To determine whether a communication from a debt collector constitutes a threat, within meaning of Fair Debt Collection Practices Act (FDCPA) sec- tion which specifically prohibits a debt collector from threatening to take any action that cannot leg- ally be taken or that is not intended to be taken, the reviewing court should look to the language used as a whole. Fair Debt Collection Practices Act, § 807(5), 15 U.S.C.A. § 1692e(5).

**[11] Antitrust and Trade Regulation 29T ⟜ 214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regula- tions
         29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
When a communication merely informs the con- sumer that the debt collector is seeking repayment, Fair Debt Collection Practices Act (FDCPA) sec- tion which specifically prohibits a debt collector from threatening to take any action that cannot leg- ally be taken or that is not intended to be taken will not be found to have been violated. Fair Debt Col-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

lection Practices Act, § 807, 15 U.S.C.A. § 1692e.

**[12] Antitrust and Trade Regulation 29T ⟲ 214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
          29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
If the communication only advises a debtor that the collection agency has several options with which to pursue the debt, this will generally be found insuffi- cient to constitute a threat in violation of Fair Debt Collection Practices Act (FDCPA) section which specifically prohibits a debt collector from threaten- ing to take any action that cannot legally be taken or that is not intended to be taken. Fair Debt Col- lection Practices Act, § 807, 15 U.S.C.A. § 1692e.

**[13] Antitrust and Trade Regulation 29T ⟲ 214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
          29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
An explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate section of Fair Debt Collection Prac- tices Act (FDCPA) section which specifically pro- hibits a debt collector from threatening to take any action that cannot legally be taken or that is not in- tended to be taken. Fair Debt Collection Practices Act, § 807, 15 U.S.C.A. § 1692e.

**[14] Antitrust and Trade Regulation 29T ⟲**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
          29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
A letter from an attorney informing the recipient that the failure to pay the debt in question will res- ult in litigation could reasonably be construed by the least sophisticated consumer as advancing a threat, within meaning of Fair Debt Collection Practices Act (FDCPA) section which specifically prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken. Fair Debt Collection Practices Act, § 807, 15 U.S.C.A. § 1692e.

**[15] Antitrust and Trade Regulation 29T ⟲ 214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
          29Tk210 Debt Collection
            29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
Debt collectors' threat to sue consumer if she did not make payment threatened legal action that could not be taken and was a false representation, in violation of Fair Debt Collection Practices Act (FDCPA), where any action to collect on debt con- sumer allegedly owed for bad check she pur- portedly wrote 10 years earlier was barred by six- year limitations period under New York law for an action to recover for a fraudulent check. Fair Debt Collection Practices Act, § 807(5, 10), 15 U.S.C.A. § 1692e(5, 10); N.Y.McKinney's CPLR 213.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

**[16] Antitrust and Trade Regulation 29T ⟜ 214**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited under the Fair Debt Collection Prac- tices Act (FDCPA) from threatening litigation with respect to such a debt. Fair Debt Collection Practices Act, § 807(5, 10), 15 U.S.C.A. § 1692e(5, 10).

**[17] Antitrust and Trade Regulation 29T ⟜ 213**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk213 k. Practices Prohibited or Re- quired in General. Most Cited Cases
Debt collectors' attempt to collect from consumer the face amount of bad check she purportedly wrote plus a service charge was a prohibited attempt to collect an amount not expressly permitted by law, in violation of the Fair Debt Collection Practices Act (FDCPA), where New York law did not permit recovery of a service charge for a dishonored check, but, rather, limited amount of damages to twice the face amount of the check or four hundred dollars, whichever was less. Fair Debt Collection Practices Act, § 808(1), 15 U.S.C.A. § 1692f(1); N.Y.McKinney's General Obligations Law § 11-104.

**[18] Antitrust and Trade Regulation 29T ⟜ 214**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
Debt collectors failed to clearly convey in debt col- lection letter the amount of debt consumer allegedly owed, in violation of the Fair Debt Collection Prac- tices Act (FDCPA), where least sophisticated con- sumer could reasonably have concluded that debt collection notice set forth two different amounts with respect to amount of debt allegedly owed, and could have been confused as to which amount con- sumer was instructed to remit to debt collectors. Fair Debt Collection Practices Act, § 809(a), 15 U.S.C.A. § 1692g(a).

**[19] Antitrust and Trade Regulation 29T ⟜ 214**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Repres- entations, and Notices; Debtor's Response. Most Cited Cases
Debt collection letter contained language that over- shadowed or contradicted Fair Debt Collection Practices Act's (FDCPA) mandatory validation no- tice, in violation of the FDCPA, where it threatened that consumer could be sued if she did not remit payment within 30 days of the date of the letter, rather than within 30 days of her receipt of the let- ter, as statutorily mandated. Fair Debt Collection Practices Act, § 809(a)(3), 15 U.S.C.A. § 1692g(a)(3).

**[20] Antitrust and Trade Regulation 29T ⟜ 214**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and
Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Repres-
entations, and Notices; Debtor's Response. Most
Cited Cases
If, from the perspective of the least sophisticated
consumer, language contained in the debt collection
notice overshadowed or contradicted the mandatory
validation notice, it violates the Fair Debt Collec-
tion Practices Act (FDCPA). Fair Debt Collection
Practices Act, § 809, 15 U.S.C.A. § 1692g.

[21] Antitrust and Trade Regulation 29T ⟺ 214

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and
Consumer Protection
        29TIII(C) Particular Subjects and Regula- tions
            29Tk210 Debt Collection
                29Tk214 k. Communications, Repres-
entations, and Notices; Debtor's Response. Most
Cited Cases
A debt collection notice will be found to be over-
shadowing or contradictory, in violation of the Fair
Debt Collection Practices Act (FDCPA), when it
fails to convey the validation information clearly
and effectively and thereby makes the least sophist-
icated consumer uncertain as to her rights; it is un-
necessary to prove the contradiction is threatening.
Fair Debt Collection Practices Act, § 809, 15
U.S.C.A. § 1692g.

[22] Federal Civil Procedure 170A ⟺ 2498.8

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2498.8 k. Fraudulent Convey-
ances, Cases Involving. Most Cited Cases

Genuine issue of material fact existed as to whether
attorney was involved in debt collection efforts at
issue, precluding summary judgment for attorney in
consumer's action alleging violations of the Fair
Debt Collection Practices Act (FDCPA). Fair Debt
Collection Practices Act, § 802 et seq., 15 U.S.C.A.
§ 1692 et seq.

Brian L. Bromberg, Bromberg Law Office, P.C.,
New York City, Joseph Mauro, Law Office of
Joseph Mauro, LLC, West Islip, NY, Lance A.
Raphael, Stacy M. Bardo, Consumer Law Center,
P.C., Chicago, IL, for Plaintiffs.
JBC Legal Group, P.C., Jack Boyajian, Marv
Brandon, Outsource Recovery Management, Inc.,
pro se.

*MEMORANDUM OPINION AND ORDER*

E. THOMAS BOYLE, United States Magistrate
Judge.
    *1 Plaintiff, Kimberly Larsen ("Larsen"),
brings this action pursuant to the Fair Debt Collec-
tion Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et
seq.*, seeking statutory damages, attorney's fees and
costs. Plaintiff alleges that defendants, JBC Legal
Group, P.C., formerly known as JBC & Associates,
P.C. ("JBC"), Jack Boyajian ("Boyajian"), Marv
Brandon, also known as Marvin Brandon
("Brandon"), and Outsource Recovery Manage-
ment, Inc. ("ORM"), violated the FDCPA when
they attempted to collect a debt from her in 2003.
Before the court is the plaintiff's motion for partial
summary judgment against all defendants. For the
following reasons, plaintiff's motion is granted in
part and denied in part.

*PROCEDURAL HISTORY*

    This action was commenced by the filing of a
Complaint against all defendants except ORM on
October 13, 2004. An Amended Complaint was
then filed on December 7, 2004. All of the then-
named defendants submitted an Answer on Decem-
ber 30, 2004.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

On August 5, 2005, plaintiff filed a Second Amended Complaint against all of the previously named defendants plus ORM. JBC, Boyajian and Brandon submitted a joint Answer on September 7, 2005. ORM filed its Answer on that same date as well.

Although plaintiff initially sought to bring this action on behalf of all others similarly situated and moved for class certification on December 20, 2006, that motion was subsequently withdrawn, without prejudice, on April 10, 2007, at the request of the plaintiff, and not renewed. Accordingly, the within summary judgment motion is brought solely on behalf of plaintiff.

By Order dated May 3, 2007, the Court directed that any dispositive motions be made on or before July 2, 2007. Any opposition was to be filed by August 31, 2007 and a reply, if any, was to be submitted by September 10, 2007. (Order of Boyle, J., dated May 3, 2007.) After granting plaintiff's requests for extensions on two occasions, the within motion was ultimately filed on July 11, 2007. Opposition was received from defendant Brandon, apparently acting *pro se,* on September 4, 2007, which the Court notes is four days beyond the deadline for submitting any opposition and is deficient in many respects. Although Brandon submitted what purports to be a Rule 56.1 counter-statement, his submission does not comport with the requirements of the local civil rules.

[1]Local Civil Rule 56.1(c) states that "unless specifically controverted by a correspondingly numbered paragraph in the statement [of material facts] required to be served by the opposing party," the material facts set forth in the moving party's Rule 56.1 statement "will be deemed to be admitted for purposes of the [summary judgment] motion."Local Civ. R. 56.1(c). Moreover, Local Civil Rule 56.1(d) unambiguously requires that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be

admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civ. R. 56.1(d). Brandon has failed to comply with either of these requirements. Rather, the majority of Brandon's Rule 56.1 statement simply contains responses that plaintiff's statements of material fact are "[i]rrelevant" and that they "[d]o[ ] not relate to liability as against Marv Brandon."[FN1](Brandon's Rule 56.1 Stmt. ¶¶ 1-8, 11-76.) Nothing in Brandon's Rule 56.1 statement can be construed as a statement of material fact. Moreover, Brandon has failed to include any evidentiary citations in his Rule 56.1 statement, as required by Rule 56.1(d). As a result of this omission, Brandon's Rule 56.1 statement is wholly inadequate and "must be disregarded." [FN2]*Fernandez v. DeLeno,* 71 F.Supp.2d 224, 227 (S.D.N.Y.1999); (citing *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.,* 135 F.3d 831, 835 (2d Cir.1998)); *see also Cooper v. Gottlieb,* No. 95 Civ. 10543, 2000 WL 1277593, at *4, 2000 U.S. Dist. LEXIS 12936, at *12-13 (S.D.N.Y. Sept. 4, 2000) (deeming the statements contained in movants' Rule 56.1 statement admitted where non-movants failed to cite to or submit any evidentiary support for the statements in their Rule 56.1 statement in opposition to motion for summary judgment).

*2 With respect to the remaining defendants, no opposition to the within motion has been received whatsoever. Accordingly, since JBC, Boyajian and ORM have failed to file any opposition, and more specifically have failed to comply with Local Civil Rule 56.1(b), which requires the submission of a counter-statement of "material facts" in opposition to a motion for summary judgment, *see* Local Civ. Rule 56.1, all of the facts in plaintiff's Rule 56.1 Statement that pertain to JBC, Boyajian and ORM are deemed admitted. *See Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003) ("If the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Local Rule 56.1(c))."[W]here a party against whom summary judgment is sought fails entirely to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

respond to the motion, the court need ensure only that the averments in the movant's Rule 56.1 statement are supported by evidence and show an absence of a genuine issue for trial."*Morisseau v. Piper,* No. 06 Civ. 13255, --- F.Supp.2d ----, ----, 2008 WL 273410, at *18, 2008 U.S. Dist. LEXIS 4699, at *60 (S.D.N.Y. Jan. 23, 2008) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 243 (2d Cir.2004)) (additional citation omitted).

*FACTS*

Plaintiff, Kimberly Larsen, is a consumer within the meaning of the FDCPA, who allegedly owes a debt that is the subject of collection efforts. (Pl. 56.1 Stmt. ¶ 1; Decl. of Kimberly Larsen, dated July 9, 2007 ("Larsen Decl."), ¶ 1.) Defendant JBC Legal Group, P.C., formerly known as JBC & Associates, P.C.,[FN3] is a debt collector incorporated in California, with a place of business located at 2 Broad Street in Bloomfield, New Jersey. (Pl. 56.1 Stmt. ¶ ¶ 2-3, 21; Reply Decl. of Brian L. Bromberg, dated Sept. 20, 2007 ("Bromberg Reply Decl."), Ex. A.) Defendant Boyajian, an attorney licensed to practice in California, was the President and owner of JBC & Associates, P.C.[FN4](*Id.* ¶ 50.)Boyajian is also the President and Secretary of JBC Legal Group, P.C.-and, presumably, its owner as well since he owned its predecessor entity-and is, at various times, personally involved in JBC's collection process, including reviewing new claims and cases, establishing procedures for debtor contact and verification, responding to complaints and inquiries, managing litigation brought to collect debts, overseeing and managing the operations of JBC's Compliance Department, supervising paralegal and office staff and "dealing with unique issues that arise."(*Id.* ¶ 7-8; Bromberg Reply Decl., Ex. A.) Defendant Brandon is an attorney licensed to practice in New York and New Jersey who was employed by JBC & Associates, P.C. and appears to currently be in business with defendant Boyajian.FN5(Pl. 56.1 Stmt. ¶ ¶ 9, 12; Brandon's 56.1 Stmt. ¶ 9; Decl. of Brian L. Bromberg, dated

July 11, 2007 ("Bromberg Decl."), Ex. EE; Bromberg Reply Decl., Ex. A.)

On or about October 24, 2003, defendant JBC Legal Group, P.C. sent or caused to be sent a letter to plaintiff, seeking to collect a debt alleged to be owed by plaintiff in the amount of $43.87 (the "debt collection notice"). (Pl. 56.1 Stmt., ¶ 21; Compl. ¶ 28; Larsen Decl., ¶ 3 and Ex. A, annexed thereto.) Boyajian was an officer of JBC Legal Group, P.C. at this time. (Pl. 56.1 Stmt. ¶ 6.) The debt collection notice stated that it sought payment for an alleged "bad check," purported to be have been written by plaintiff on a Chase Manhattan checking account on April 14, 1993, in the amount of $23.87.FN6 (Larsen Decl., ¶ 3 and Ex. A.) This was the first communication that plaintiff received from JBC.FN7 (Pl. 56.1 Stmt., ¶ 22; Larsen Decl., ¶ 3.)

*3 The debt reflected in the October 24, 2003 debt collection notice is allegedly due to defendant ORM, which claims to have acquired the debt in or about October 2003. (Pl. 56.1 Stmt. ¶ 33.) The business of ORM is to purchase debts that are in default from other entities. (*Id.* ¶ 37.)Boyajian is the president and director of ORM and ORM's address is the same as that of JBC Legal Group, P.C. (*Id.* ¶ ¶ 34-36.)ORM retained JBC to collect the alleged debt from plaintiff. (*Id.* ¶ 38.)ORM uses JBC exclusively as the collector on the debts that it purchases. (*Id.* ¶ 39.)

Although the October 24, 2003 debt collection notice that plaintiff received stated that failure to satisfy the debt may result in legal action being taken against her, no such litigation was in fact commenced. (Larsen Decl., ¶ 7 and Ex. A; Pl. 56.1 Stmt., ¶ 25.) Plaintiff has not paid the amount alleged to be owed by her in the October 24, 2003 letter. (Pl. 56.1 Stmt., ¶ 24.)

Defendant Boyajian is the individual responsible within JBC for reviewing the accounts and deciding whether to send letters such as the October 24, 2003 debt collection notice received by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

Page 9

plaintiff. (*Id.* ¶ 43.)Boyajian is also responsible for determining the amount demanded in these notices, as well as whether or not to institute litigation with respect to a particular debt.(*Id.* ¶¶ 44-45.)Boyajian reviewed and/or drafted the form of the notices that JBC sent to alleged debtors in connection with its efforts to collect a debt, including the October 24, 2003 debt collection notice sent to plaintiff, and authorized the mailing of such notices.[FN8](*Id.* ¶¶ 46-47.)

## DISCUSSION

### I. *Legal Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to establish the lack of any factual issues. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the requirement is that there be no "genuine issue of material fact." *Id.* at 248, 106 S.Ct. 2505.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the

material facts."*Id.* at 586, 106 S.Ct. 1348.Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing there is a genuine issue for trial."*Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

*4 When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof'... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."*SEC v. Meltzer,* 440 F.Supp.2d 179, 187 (E.D.N.Y.2006) (quoting *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988)) (internal citations omitted)."Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim."*Meltzer,* 440 F.Supp.2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action."*Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.Rule 56 must be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, ... prior to trial, that the claims and defenses have no factual basis."*Id.* By its terms, Rule 56 does not require that a trial judge make any findings of fact. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.The only inquiry to be performed is the determination of whether there is a need for trial. *See id.*The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

## II. *The FDCPA*

[2] The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."15 U.S.C. § 1692e. The sixteen subsections contained in Section 1692e of the Act provide a non-exhaustive list of practices that fall within the FD-CPA's ban. *See id.*A debt collection practice may violate the FDCPA even if it does not fall within any of the enumerated circumstances set forth in Section 1692e, *see Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 62 (2d Cir.1993) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)), and "[a] single violation of § 1692e is sufficient to establish civil liability under the FD-CPA."*Clomon,* 988 F.2d at 1318 (citation omitted); *see also*15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter").

[3] The test for determining whether a collection notice violates the FDCPA is "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector."*Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996) (citing *Clomon,* 988 F.2d at 1318). The "basic purpose" of this standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."*Id.*"This least-sophisticated-consumer standard best effectuates the [FDCPA's] purpose of limiting the 'suffering and anguish' often inflicted by independent debt collectors."*Russell v. Equifax A.R.S.,* 74 F.3d at 34 (quoting S.Rep. No. 95-382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696).

**\*5** [4] A debt collector who is found to have violated the FDCPA is liable for actual damages incurred by the plaintiff, as well as any other damages that the court, in its discretion, may find appropriate, not to exceed $1,000, plus reasonable attorney's fees and costs. *See*15 U.S.C. § 1692k(a); *Russell,* 74 F.3d at 33.Moreover, the FDCPA is a strict liability statute. *See Russell,* 74 F.3d at 34.Ac-

cordingly, "a consumer need not show intentional conduct by the debt collector to be entitled to damages."*Id.*

## III. *Plaintiff is Entitled to Partial Summary Judgment Against JBC, Boyajian and ORM*[FN9]

### A. *Judgment by Default*

[5] Pursuant to Federal Rule of Civil Procedure 56(e), if the non-moving party fails to respond to a summary judgment motion, "summary judgment, if appropriate, shall be entered against the adverse party."Fed.R.Civ.P. 56(e). As the Second Circuit has announced:

[L]itigants should be on notice from the very publication of Rule 56(e) that a party faced with a summary judgment motion 'may not rest upon the mere allegations or denials' of the party's pleading and that if the party does not respond properly, 'summary judgment, if appropriate, shall be entered' against him.

*Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) (quoting Fed.R.Civ.P. 56(e)). Furthermore, the local rules of the district courts in the circuit provide notice that action is called for in response to a motion for summary judgment. *See id.; see also* Local Civ. R. 56.1.

The courts in this circuit routinely grant summary judgment by default where a party fails to respond to the motion in violation of court rules and/or scheduling orders. *See, e.g., Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248 (2d Cir.1997) (granting summary judgment by default for failure to respond to the motion despite a local court rule that failure to respond to a motion is deemed consent to the motion); *In re Towers Fin. Corp. Noteholders Litig.,* 996 F.Supp. 266 (S.D.N.Y.1998) (granting default judgment against defendants who failed to respond to summary judgment motion by court-ordered deadline); *Sea-Land Serv., Inc. v. Citihope Int'l, Inc.,* 176 F.R.D. 118, 121 (S.D.N.Y.1997) (granting summary judgment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

where defendant failed to respond to plaintiff's Rule 56.1 Statement, "a failure that independently results in the facts there set forth being deemed admitted"); *Lediju v. New York City Dep't of Sanitation,* 173 F.R.D. 105 (S.D.N.Y.1997) (granting summary judgment by default for plaintiff's failure to respond to defendant's summary judgment motion and failure to obey scheduling orders); *Modefine S.A. v. Burlington Coat Factory Warehouse Corp.,* 919 F.Supp. 723 (S.D.N.Y.1996) (granting default judgment against defendants who failed to respond to summary judgment motion by deadline set by court).

Plaintiff filed her motion for summary judgment in this action seven months ago. JBC, Boyajian and ORM were afforded adequate time to oppose the within motion. No such opposition has been received by the Court. Nor have these defendants communicated with the Court in any way as to their failure to oppose plaintiff's motion. Accordingly, due to the default of JBC, Boyajian and ORM, plaintiff is entitled to have her motion for summary judgment granted as against those defendants.

### B. *Judgment on the Merits*

*6 Even if the Court were to overlook the failure of JBC, Boyajian and ORM to enter any opposition whatsoever to plaintiff's motion, plaintiff is still entitled to summary judgment on the merits of her FDCPA claims.

#### 1. *JBC, Boyajian and ORM Qualify as Debt Collectors Under the FDCPA*

[6] As a threshold matter, the Court must determine whether JBC, Boyajian and ORM qualify as debt collectors under the FDCPA for purposes of liability. The FDCPA defines a "debt collector" as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Specifically excluded from this definition are creditors who seek to collect their own debts. *See Kinel v. Sherman Acquisition II LP,* No. 05 Civ. 3456, 2006 WL 5157678, at *5-6, 2006 U.S. Dist. LEXIS 97073, at *17 (S.D.N.Y. Feb. 28, 2006) (citations omitted); *Shevach v. Am. Fitness Franchise Corp.,* No. 98 Civ. 2938, 2001 WL 274121, at *3, 2001 U.S. Dist. LEXIS 2899, at *7 (S.D.N.Y. Mar. 14, 2001) (stating that the FDCPA "creates a cause of action against independent debt collectors rather than creditors seeking to enforce collection of their own debts") (citations omitted); 15 U.S.C. § 1692a(6)(F)."An assignee of a debt is also excluded, unless the debt sought to be collected was in default at the time it was obtained."*Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *18 (citations omitted); 15 U.S.C. § 1692a(6)(F)(iii) (excluding from the definition of debt collector "any person collecting or attempting to collect any debt owed ... or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person")."[T]hose who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection."*Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *19 (quotation omitted).

In the instant action, the defendants have admitted that JBC is a debt collector. (Letter from JBC Legal Group, P.C. to plaintiff, dated Jan. 14, 2004, annexed as Ex. B to Larsen Decl. (stating "[t]his is an attempt to collect a debt by a debt collector"); Def. Resp. to Pl. First Set of Discovery Requests, No. 4, annexed as Ex. K to Bromberg Decl. (admitting that JBC Legal Group, P.C. is a "'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)").) Accordingly, there is no dispute with respect to the ability to hold JBC liable for violations of the FDCPA. Although Boyajian and ORM

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

have failed to interpose any opposition to plaintiff's allegations that they are both debt collectors within the meaning of the FDCPA, the Court will nevertheless examine the status of each to ensure that liability may be properly imposed against them.

[7] With respect to Boyajian, a review of the documentary evidence submitted by plaintiff in connection with this action establishes that Boyajian is undoubtedly a debt collector. Boyajian is the President and Secretary, and presumed owner, of JBC Legal Group, P.C. In deposition testimony provided by Boyajian in January 2004, he testified in *Goins v. JBC Assoc., P.C.,* No. 3:03cv636 (D.Conn.), that in his role as owner and President of JBC & Associates, P.C., the predecessor to JBC Legal Group, P.C., he "provides services to clients who have debts that are with consumers that I am engaged in recovering for."(Boyajian Dep., 25.) Boyajian further stated that he has sole control over the form of the debt collection notice that is sent to a particular debtor and that he "make[s] the final decision on what letters are sent out and what they contain."(*Id.,* 39-40.)Based on this same deposition testimony, the court in *Goins* found that Boyajian "undisputedly acted as a debt collector."*Goins,* 352 F.Supp.2d at 268.That same finding is made here.

*7 [8] With respect to ORM, the Court finds that it, too, is a debt collector within the meaning of the FDCPA. A review of ORM's Answer to the Second Amended Complaint in this action demonstrates that ORM acquired plaintiff's debt in or about October 2003, about the same time that JBC sent its initial debt collection notice to plaintiff. (ORM Ans. ¶ 34.) The business of ORM is to purchase debts that are in default from other entities. (*Id.* ¶ 15.)ORM retained JBC to collect plaintiff's debt. (*Id.* ¶ 35.)Moreover, ORM uses JBC exclusively as the collector on the debts that it purchases. (Boyajian Dep., 42.) As stated above, an assignee of a debt that is in default at the time the debt was obtained is considered a debt collector for purposes of the FDCPA. *See Kinel,* 2006 WL 5157678, at *6, 2006 U.S. Dist. LEXIS 97073, at *18.ORM's busi-

ness is to purchase debts that are in default from other entities and ORM purchased plaintiff's debt in October 2003-more than ten years after the check plaintiff is alleged to have written was dishonored. The debt was undoubtedly in default before JBC was retained to collect plaintiff's debt on behalf of ORM, and thus, there can be no doubt that ORM falls within the definition of a debt collector as used in the FDCPA.

Based on the foregoing, the Court finds that JBC, Boyajian and ORM are all "debt collectors" within the meaning of the FDCPA and as such, can be held liable for any violations of the Act.

### 2. 15 U.S.C. §§ 1692e and 1692f

As stated above, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."15 U.S.C. § 1692e. Moreover, Section 1692f of the FDCPA mandates that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."15 U.S.C. § 1692f. Plaintiff asserts that defendants have violated Sections 1692e and 1692f in the following ways: (1) by threatening a legal action that cannot be taken; and, (2) by attempting to collect an amount or cost that cannot be recovered.

### a. Threatening a Legal Action That Cannot be Taken

[9][10]15 U.S.C. § 1692e(5) specifically prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."15 U.S.C. § 1692e(5).Section 1692e(10) of the FDCPA prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt...."15 U.S.C. § 1692e(10). In order to establish a violation of Sections 1692e(5) and e(10), the plaintiff must demonstrate two things: (i) threatened action, (ii) which was not intended to be taken. *See Bentley,* 6 F.3d at 62;*Tsenes v. Trans-Continental Credit & Collection*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Corp.*, 892 F.Supp. 461, 465 (E.D.N.Y.1995)."To determine whether a communication from a debt collector constitutes a threat, the reviewing court should look to the language used as a whole."*Baptist v. Global Holding and Investment Co., LLC,* No. 04-CV-2365, 2007 WL 1989450, at *2, 2007 U.S. Dist. LEXIS 49476, at *6 (E.D.N.Y. July 9, 2007) (citing *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 25-26 (2d Cir.1989)).

*8 [11][12][13] Where a communication merely informs the consumer that the debt collector is seeking repayment, Section 1692e will not be found to have been violated. *See Baptist,* 2007 WL 1989450, at *2-3, 2007 U.S. Dist. LEXIS 49476, at *7 (citing cases). Similarly, if the communication "only advises a debtor that the collection agency has several options with which to pursue the debt," this too will generally be found insufficient to constitute a threat in violation of Section 1692e. *Id.* (citing *Spira v. Ashwood Fin. Inc.,* 358 F.Supp.2d 150 (E.D.N.Y.2005)). However, "an explicit threat of litigation or an implication that legal action is inevitable, when such is not the case, will violate § 1692e(5)."*Baptist,* 2007 WL 1989450, at *3, 2007 U.S. Dist. LEXIS 49476, at *7-8 (citing cases).

[14] With respect to the first element, all that is required is that the least sophisticated consumer reasonably interpret the communication as advancing a threat of legal action. Here, the October 24, 2003 debt collection notice explicitly states "**Warning:** You may be sued 30 days after the date of this notice if you do not make payment."(Larsen Decl., Ex. A.) The letter goes on to state as follows: "If you do not make payment, you may be sued under New York General Obligations Law Section 11-104 to recover payment. (*Id.*) The letter is signed "JBC & Associates, P.C., Attorneys at Law."(*Id.*) Moreover, the letter "suggests that the only way to avoid ... legal action would be to voluntarily pay the debt[ ]."*Baptist,* 2007 WL 1989450, at *4, 2007 U.S. Dist. LEXIS 49476, at *12 (citation omitted). A letter from an attorney informing the recipient that the failure to pay the debt

in question will result in litigation could reasonably be construed by the least sophisticated consumer as advancing a threat. *See Bentley,* 6 F.3d at 62 (holding that a letter declaring that a consumer's debt has been referred to an attorney, and that continued failure to pay the debt will result in legal action, could reasonably be interpreted by the least sophisticated consumer to mean that "legal action was authorized, likely and imminent"). Accordingly, plaintiff has satisfied the first prong of a claim pursuant to Sections 1692e(5) and 1692e(10).

[15][16] Plaintiff next has the burden of demonstrating that the possibility of the threatened lawsuit could be "ruled out," such that defendants had no intention of ever bringing legal action against her.*Tsenes,* 892 F.Supp. at 465.Plaintiff asserts that the debt for which defendants sought collection was time-barred under New York law and, accordingly, defendants were threatening to "to take ... action that cannot legally be taken" in violation of Section 1692e(5), which also constitutes a "false representation" in violation of Section 1692e(10). Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt. *See Baptist,* 2007 WL 1989450, at *4, 2007 U.S. Dist. LEXIS 49476, at *13 (citing *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir.2001)); *see also Goins v. JBC & Assoc., P.C.,* 352 F.Supp.2d 262, 272 (D.Conn.2005) ("[A]s the statute of limitations would be a complete defense ...., the threat to bring suit under such circumstances can at best be described as a 'misleading' representation, in violation of § 1692e.").

*9 Under New York law, the statute of limitations for an action to recover for a fraudulent check is six years. *See*N.Y. C.P.L.R. 213. At the time that defendants issued the October 24, 2003 debt collection notice to plaintiff, the check referenced in the communication, which was dated April 14, 1993, was more than ten years old. (Larsen Decl., Ex. A.) Accordingly, any action to collect on that debt

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

would have been time-barred. Given the fact that Boyajian, the owner and operator of JBC, as well as the President of ORM, is a licensed attorney, it is certainly reasonable to conclude that defendants were aware that any legal action with respect to plaintiff's purported debt would be fruitless. "To allow a debt collector to threaten a consumer with legal action, even though the statute of limitations would provide the consumer with the ultimate defense, would be to encourage manipulation and misuse of the legal system."*Baptist,* 2007 WL 1989450, at *5, 2007 U.S. Dist. LEXIS 49476, at *15.

Based on the foregoing, it is clear that the October 24, 2003 debt collection notice sent to plaintiff by JBC threatened legal action that could not be taken, which also constitutes a false representation. By doing so, JBC, Boyajian and ORM violated Sections 1692e(5) and 1692e(10) of the FDCPA and plaintiff is entitled to summary judgment on those claims.

### b. *Attempting to Collect an Amount That Cannot be Recovered*

[17]15 U.S.C. § 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."15 U.S.C. § 1692f(1).

The October 24, 2003 letter sent to plaintiff by JBC states as follows:
If you do not make payment, you may be sued under New York General Obligations Law Section 11-104 to recover payment. If a judgment is rendered against you in court, it may include not only the original face amount of each check and the service charge for each check, but also statutory penalties equal to twice the face amount of each check or Four Hundred Dollars ($400.00) per check, whichever is less.

(Larsen Decl., Ex. A.) Plaintiff asserts that the above-quoted language violates 15 U.S.C. § 1692f(1) because defendants failed to comply with the notice and mailing requirements set forth in New York General Obligations Law § 11-104, which are prerequisites to obtaining the statutory penalties provided for thereunder. As noted above, JBC, Boyajian and ORM have not provided any opposition to plaintiff's assertion.

New York General Obligations Law § 11-104 provides for the recovery of "additional, liquidated damages" in situations where an individual tenders a check that he or she knows or should know will not be honored for payment.N.Y. Gen. Oblig. § 11-104(1). To be entitled to such additional damages, however, the payee must comply with the requirements of Section 11-104(7) of the New York General Obligations Law, which provides that "[t]he first written demand for payment on the dishonored check ... shall be sent ... by first class mail and by certified mail return receipt requested with delivery restricted to the drawer ..."*Id.* § 11-104(7). The statute further requires that "[t]he second written demand for payment on the dishonored check ... shall be sent ... by first class mail on or after the fifteenth day following the date of receipt of the first written demand for payment."*Id.* The notice language that is required to be employed when sending a "Demand for Payment of Dishonored Check" under the New York General Obligations Law is set forth in subsection 8 of the statute. *See*N.Y. Gen. Oblig. § 11-104(8). Finally, the statutory damages recoverable under the New York General Obligations Law for a dishonored check are limited to "twice the face amount of the check or four hundred dollars, whichever is less."N.Y. Gen. Oblig. § 11-104(3).

*10 Although plaintiff asserts in her memorandum of law in support of her motion that defendants failed to comply with the notice and mailing requirements of New York General Obligations Law § 11-104, (Pl. Mem. of Law in Supp. of Partial Summ. J., 16-17), no such statement is included in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

plaintiff's declaration in support of her motion. Nor has plaintiff provided any documentary evidence from which the Court could reasonably conclude that such a failure on defendants' part occurred. However, as stated above, New York General Obligations Law § 11-104(3) limits the amount of "additional, liquidated damages" that a payee may seek to "twice the amount of the check or four hundred dollars, whichever is less."N.Y. Gen. Oblig. § 11-104(3). Here, the communication sent by JBC to plaintiff on October 24, 2003 states that if a judgment were to be rendered against plaintiff under New York General Obligations Law Section 11-104, "it may include not only the original face amount of each check *and the service charge for each check,* but also statutory penalties equal to twice the amount of each check or Four Hundred Dollars ($400.00) per check, whichever is less."(Larsen Decl., Ex. A) (emphasis added). The service charge for each check is plainly not recoverable under New York General Obligations Law § 11-104.

Accordingly, by stating that they would attempt to collect from plaintiff an amount of damages that is not permitted by law, JBC, Boyajian and ORM have violated 15 U.S.C. § 1692f(1) and plaintiff is entitled to summary judgment on that claim.

### 3. *15 U.S.C. § 1692g*

When a debt collector solicits payment from a consumer, it "must-within five days of the initial communication-provide the consumer with a detailed validation notice" that includes the following information:
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the

debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998); 15 U.S.C. § 1692g(a)."This information ... arms the consumer with the facts necessary to challenge the debt allegedly owed prior to submitting payment to the collection agency."*Kolganov v. Phillips & Cohen Assoc., Ltd.,* No. CV-02-3710, 2004 WL 958028, at *2, 2004 U.S. Dist. LEXIS 7069, at *5-6 (E.D.N.Y. Apr. 8, 2004) (citations omitted)."However, 'it is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer-Congress intended that such notice be clearly conveyed.'"*Rumpler v. Phillips & Cohen Assoc., Ltd.,* 219 F.Supp.2d 251, 258 (E.D.N.Y.2002) (quoting *Russell,* 74 F.3d at 35).

*11 Plaintiff asserts that defendants violated 15 U.S.C. § 1692g in two ways: (1) by failing to set forth the amount of the debt owed and (2) by overshadowing and contradicting the validation notice. As with the other provisions of the FDCPA, the "least sophisticated consumer" test is used to determine whether a violation of Section 1692g has occurred. *See Russell,* 74 F.3d at 34.

### a. *Failing to Set Forth the Amount of the Debt*

[18] Plaintiff argues that the debt collection notice sent to her by JBC violates 15 U.S.C. § 1692g(a)(1) because it does not clearly set forth the amount of the debt that she purportedly owes. The October 24, 2003 communication states in two separate places that the amount of the debt owed is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

$43.87, which includes the "face amount" of the check plus a $20 "return charge" or "service charge." (Larsen Decl., Ex. A.) However, in another portion of the letter, defendants state that "[f]ull amount of the check(s) and a $25.00 service charge for each check listed is now due in our office."(*Id.*) (emphasis added.) This language would appear to indicate that the debt that plaintiff allegedly owes is actually $48.87, not $43.87, as stated elsewhere in the communication. Then, just above the signature line, the letter states "Please remit $43.87 payable to JBC & Associates, P.C. and mail to the above address."(*Id.*) The least sophisticated consumer could reasonably conclude that the debt collection notice sets forth two different amounts with respect to the amount of the debt owed and therefore be confused as to which amount they are being instructed to remit to the debt collector.

Accordingly, the failure by JBC to clearly convey the amount of the debt owed in the October 24, 2003 debt collection notice sent to plaintiff violates 15 U.S.C. § 1692g(a)(1) and plaintiff is entitled to summary judgment against JBC, Boyajian and ORM on that claim.

b. *Overshadowing and Contradicting the Validation Notice*

[19][20][21] Where a debt collection notice "contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the [FDCPA]."*Id.*(quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991) (stating that "the juxtaposition of two inconsistent statements" renders the debt collection notice invalid under § 1692g). The question, therefore, is "whether, from the perspective of the least sophisticated consumer, language contained in the [debt collection] notice overshadowed or contradicted the mandatory validation notice; if so, then the [FDCPA] is violated."*Russell*, 74 F.3d at 35.A debt collection notice will be found to be overshadowing or contradictory where "it fails to convey the validation information clearly and effectively and

thereby makes the least sophisticated consumer uncertain as to her rights."*Savino*, 164 F.3d at 85 (citing *Russell*, 74 F.3d at 35)."It is unnecessary to prove the contradiction is threatening."*Russell*, 74 F.3d at 35.

*12 Here, the October 24, 2003 debt collection notice sent to plaintiff by JBC begins with the following language: "**Warning**: You may be sued 30 days after the date of this notice if you do not make payment."(Larsen Decl., Ex. A.) Plaintiff asserts that this statement violates the FDCPA because it threatens plaintiff with adverse consequences-namely, a lawsuit-if she does not remit payment within thirty days of the date of the notice, rather than within thirty days of her receipt of the notice, as statutorily mandated under 15 U.S.C. § 1692g(a)(3). The letter goes on to state that plaintiff has "thirty (30) days from receipt of this letter to pay the full amount" and the validation notice contained at the bottom of the letter states that plaintiff has thirty days from receipt of the notice to dispute the debt. (*Id.*) The various statements indicating different times within which plaintiff is required to respond are clearly contradictory.

"By specifying that the debt must be disputed within thirty days from the date of receipt of the notice, Congress has consciously protected against abusive tactics of debt collectors, such as the backdating of notices or other practices that might shorten debtors time to respond."*Cavallaro v. The Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1154 (E.D.N.Y.1996). In the within action, although the FDCPA permits consumers thirty days from the receipt of a debt collection notice to dispute a debt, defendants herein demand that payment be made thirty days from the date of the notice or else litigation against plaintiff may be commenced. Such a demand implies that plaintiff has less than the statutorily required time period provided for under 15 U.S.C. § 1692g(a)(3) to dispute her debt.

Moreover, "[e]ven the least-sophisticated consumer would calculate that payment must be mailed in advance of a deadline in order to be received by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

that deadline."*Swift v. Maximus, Inc.,* No. 04-CV-216, 2004 WL 1576618, at *4 (E.D.N.Y. July 15, 2004). Accordingly, "the consumer holds a notice that demands payment from less than thirty days from when she received the letter, and she calculates that payment must be mailed several days before the deadline."*Id.* Under such circumstances, "[t]he letter's demand for payment takes on a quality of 'immediateness.' "*Id.*

Where an immediate demand for payment is included in a debt collection notice, the demand "must be paired with 'transitional language' " informing the consumer that the demand does not override his or her rights under Section 1692g to dispute or seek validation of the debt. *Id.* (quoting *Savino,* 164 F.3d at 86). Although the Court presumes that the letter is read in its entirety, *see Mc-Stay v. I.C. Sys., Inc.,* 308 F.3d 188, 191 (2d Cir.2002), "when the statements are contradictory there is a greater need for clarifying transitional language."*Swift,* 2004 WL 1576618, at *4 (citing *Hillaire v. Delta Funding Corp.,* 2002 WL 31123860, at *3 (E.D.N.Y. Sept. 26, 2002)). No such clarifying language can be found in the October 24, 2003 debt collection notice sent by JBC to plaintiff.

*13 Based on the foregoing, although the demand for payment, standing alone, does not violate the FDCPA, the October 24, 2003 debt collection notice fails to adequately explain to plaintiff that she retains her rights pursuant to 15 U.S.C. § 1692g. Rather, the demand for payment at the top of the letter overshadows and conflicts with the validation notice found at the bottom of the letter, particularly since it is accompanied by a "warning" in bold letters. Accordingly, the letter violates Section 1692g of the FDCPA and plaintiff is entitled to summary judgment against JBC, Boyajian and ORM on that claim as well.

*IV. Defendant Brandon*

[22] Brandon is the only defendant herein to

submit opposition to plaintiff's motion. Although difficult to understand, it appears that Brandon's opposition asserts that there is a triable issue of fact as to whether he was functioning as a debt collector on behalf of JBC in 2003 or 2004-the years in which plaintiff was sent debt collection notices-and whether he had any personal involvement with the debt collection notices received by plaintiff. Brandon further asserts that the documentary evidence pertaining to him, which was relied upon and supplied by plaintiff in support of her motion, actually relates to Brandon's involvement with JBC & Associates, Inc., which, according to Brandon, is a wholly separate entity than JBC & Associates, P.C., the predecessor in interest to JBC Legal Group, P.C.

As noted above, in deposition testimony provided by Boyajian in another action, *Goins v. JBC & Assoc., P.C.,* No. 3:03cv636 (D.Conn.), which plaintiff submitted in support of the within motion, Boyajian states that there is no relationship between "JBC [& Associates], Inc." and "JBC [& Associates], P.C." (Boyajian Dep., at 19, annexed to Bromberg Decl. at Ex. FF.) Boyajian further states that "JBC [& Associates], Inc. is a New Jersey corporation that was engaged in collection activities and no longer is doing so. And JBC [& Associates], PC is a California professional corporation, a law firm."(*Id.,* at 21.)Moreover, when asked whether JBC & Associates, Inc. and JBC & Associates, P.C. were a "singular entity that changed its name from Inc. to PC," Boyajian responded "[n]o." (*Id.,* 19.)

Similarly, in deposition testimony provided by Brandon in connection with the same action, which was also submitted by plaintiff in support of the within motion, Brandon states that "JBC [& Associates], Inc." is "a collection agency," while "JBC & Associates, P.C. is a law firm."(Brandon Dep., at 5.) Brandon further states that he is an employee of JBC & Associates, P.C. and formerly an employee of JBC & Associates, Inc. (*Id.*)

The Court has reviewed the documents cited by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

plaintiff as supportive of the facts pertaining to Brandon contained in plaintiff's Rule 56.1 Statement and can find no evidence that conclusively establishes that Brandon was a debt collector on behalf of JBC in 2003 or 2004. Nor is the Court able to conclude from the evidence submitted that Brandon was personally involved in the debt collection process as it pertained to plaintiff. Moreover, although plaintiff alleges that JBC & Associates, Inc. is a predecessor in interest to JBC & Associates, P.C. and JBC Legal Group, P.C., the documents provided in connection with the within motion appear to indicate otherwise, as discussed above. Plaintiff's evidence and the inferences to be drawn therefrom squarely conflict with Brandon's opposition. Accordingly, there exists a genuine issue of material fact as to whether Brandon was involved in the debt collection efforts at issue herein and summary judgment in plaintiff's favor against Brandon would be inappropriate.

*14 Based on the foregoing, plaintiff's motion for summary judgment as against defendant Brandon is denied.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted as to plaintiff's FDCPA claims against defendants JBC Legal Group, P.C., Jack Boyajian and Outsource Recovery Management, Inc. Plaintiff's motion for partial summary judgment is denied as to plaintiff's FDCPA claims against Marvin Brandon.

SO ORDERED.

FN1. All of Brandon's responses are virtually identical with the exception of two numbered paragraphs. With respect to plaintiff's paragraph eleven, Brandon states that the statement of material fact contained therein is "[v]ague and [a]mbiguous as to whom it applies," (Brandon's Rule 56.1 Stmt. ¶ 11), and Brandon's response

to plaintiff's paragraph nine is simply "none," which the Court presumes is meant to imply that Brandon does not dispute this statement of material fact. (Id. ¶ 9.)

FN2. Although it appears that Brandon is acting *pro se* with respect to this motion, the rules afforded *pro se* litigants are not relaxed when that litigant is also an attorney, as Brandon is. *See Leeds v. Meltz*, 898 F.Supp. 146, 149 (E.D.N.Y.1995), *aff'd,*85 F.3d 51 (2d Cir.1996) (holding that *pro se* attorney was not entitled to the liberality normally accorded *pro se* litigants); *Woods v. State*, 469 F.Supp. 1127, 1128 n. 1 (S.D.N.Y.1979) ("Although [defendant] appears *pro se,* he is an attorney and is held to the same standards as other attorneys appearing before the court."); *DeFina v. Latimer*, 79 F.R.D. 5, 6 (E.D.N.Y.1977) (requiring skillfully drawn pleadings from the *pro se* plaintiff because she was an attorney).

FN3. In August 2005, JBC Legal Group, P.C. apparently changed its name once again to Boyajian & Brandon Legal Group, P.C. (Bromberg Reply Decl., ¶ 6 and Ex. A, annexed thereto.) This amendment was endorsed by the Secretary of State of California on September 15, 2005. (Bromberg Reply Decl., Ex. A.)

FN4. Boyajian was also the President of JBC & Associates, Inc., which plaintiff asserts is also a predecessor in interest to JBC Legal Group, P.C. (Pl. 56.1 Stmt. ¶¶ 4, 49.) However, in deposition testimony provided by Boyajian in another action, *Goins v. JBC & Assoc., P.C.*, No. 3:03 cv636 (D.Conn.), which plaintiff submitted in support of the within motion, Boyajian states that there is no relationship between "JBC, Inc." and "JBC, P.C." (Dep. of Jack H. Boyajian, dated Jan. 27, 2004 ("Boyajian Dep."), at 19, annexed to Decl.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

of Brian L. Bromberg, dated July 11, 2007 ("Bromberg Decl.") at Ex. FF.) Boyajian goes on to state that "JBC, Inc. is a New Jersey corporation that was engaged in collection activities and no longer is doing so. And JBC, PC is a California professional corporation, a law firm."(*Id.,* 21.)In addition, when asked whether JBC & Associates, Inc. and JBC & Associates, P.C. were a "singular entity that changed its name from Inc. to PC," Boyajian responded "[n]o." (*Id.,* 19.)

FN5. It is unclear what Brandon's role is in relation to JBC Legal Group, P.C. since, although he disputes the plaintiff's allegations that he functioned as a debt collector for JBC Legal Group, P.C., Brandon does not explain what role, if any, he played with respect to that entity. (*See generally* Brandon's Opp'n to Mot. for Summ. J.) While the documentary evidence submitted by plaintiff establishes that Brandon was a debt collector for JBC & Associates, Inc., Brandon asserts that JBC & Associates, Inc. is a wholly separate organization than JBC & Associates, P.C., which, as stated above, is the predecessor in interest to JBC Legal Group, P.C. (*Id.*)In *Goins,* the United States District Court for the District of Connecticut found that Brandon was an employee of JBC & Associates, P.C. *See Goins v. JBC & Assoc., P.C.,* 352 F.Supp.2d 262, 264 (D.Conn.2005). Brandon testified to that effect as well during a deposition taken in connection with that case. (Dep. of Marv Brandon, dated Sept. 5, 2003 ("Brandon Dep."), at 5, annexed to Bromberg Decl. as Ex. EE.)

FN6. While the amount of the check written by plaintiff was alleged to be $23.87, the amount of the debt sought to be collected was $43.87, which included a $20 "return charge" or "service charge."

(Larsen Decl., Ex. A.)

FN7. Defendants claim to have sent plaintiff a second letter as well, dated January 14, 2004; however, plaintiff has no recollection of receiving a second letter. (Pl. 56.1 Stmt., ¶ 23; Larsen Decl., 8 and Ex. B, annexed thereto.)

FN8. It should be noted that the defendants herein have also been sued in other states for sending notices similar to the one received by plaintiff. *See, e.g., Abels v. JBC Legal Group, P.C.,* No. C 04-02345 (N.D.Cal.); *Alexander v. JBC Legal Group, P.C.,* No. CV-05-16-H (D.Mont.); *Casden v. JBC Legal Group, P.C.,* No. 04-60669-Civ (S.D.Fla.); *Culver v. JBC Legal Group, P.C.,* No. 5:04-CV-389 (E.D.N.C.); *Defenbaugh v. JBC & Assoc., Inc.,* No. C-03-0651 (N.D.Cal.); *Dunaway v. JBC & Assoc., Inc.,* No. 03-73597 (E.D.Mich.); *Godfredson v. JBC Legal Group, P.C.,* No. 5:04-CV-390-FL(1) (E.D.N.C.); *Goins v. Brandon,* No. 3:02CV01537 (D.Conn.); *Goins v. JBC & Assoc., P.C.,* No. 3:03cv636 (D.Conn.); *Littledove v. JBC & Assoc., Inc.,* No. S-00-0586 (E.D.Cal); *Martsolf v. JBC Legal Group, P.C.,* No. 04-CV-1346 (M.D.Pa.); *Semper v. JBC Legal Group,* No. C04-2240L (W.D.Wash.); *Sullivan v. JBC Legal Group, P.C.,* No. 04-3752 (E.D.Pa.); *Thinesen v. JBC Legal Group, P.C.,* No. 05-518 (D.Minn.).

FN9. Since defendant Brandon submitted opposition to the within motion, his alleged liability will be discussed separately from that of JBC, Boyajian and ORM.

E.D.N.Y.,2008.
Larsen v. JBC Legal Group, P.C.
--- F.Supp.2d ----, 2008 WL 380425 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

▷
Madonna v. Academy Collection Service, Inc.
D.Conn.,1997.
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Philip A. MADONNA, plaintiff,
v.
ACADEMY COLLECTION SERVICE, INC., defendant.
No. 3:95CV00875 (AVC).

Aug. 12, 1997.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, Counsel for Plaintiff Philip A. Madonna.
Jonathan D. Elliot, Kelban & Samor, P.C., Southport, CT, Counsel for Defendant Academy Collection Service, Inc.

### MEMORANDUM OF DECISION

CABRANES, Circuit J.[FN*]

> FN* Of the United States Court of Appeals for the Second Circuit, sitting by designation.

*1 Plaintiff's claims that defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq., were tried to the bench on July 9, 1997. Specifically, plaintiff claims that three letters sent by defendant to collect on an outstanding debt constituted unlawful debt collection practices under 15 U.S.C. § 1692e [FN1] and C.G.S. § 42-110b.[FN2] Plaintiff seeks actual damages, statutory damages, costs and attorney's fees, injunctive relief, and punitive damages, for alleged unlawful collection practices.[FN3]

> FN1. 15 U.S.C. § 1692e provides, in pertinent part: "A debt collector may not use any false, deceptive or misleading representation or means in connection with the

collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (4) the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.... (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

> FN2. C.G.S. § 42-110b provides, in pertinent part: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

> FN3. Plaintiff prior to trial abandoned his claim of unauthorized practice of law and his claim that defendant violated 15 U.S.C. § 1692c by unlawfully contacting third parties.

### FINDINGS OF FACT

Based on the stipulations by the parties, the testimony presented at trial and the exhibits admitted in full during the course of the proceedings, I hereby enter the following findings of fact pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

1. Plaintiff Philip A. Madonna is a college graduate and an experienced accountant, currently working as an assistant to the Mayor of the City of East Haven, CT. See Testimony of Philip A. Madonna.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

2. At the times relevant here, Madonna had an outstanding credit card debt of over $2,400 owed to Citibank. *See id.*

3. Plaintiff has previously been a party to suits similar to the instant action (he could not remember the exact number), at least one of which was settled for an undisclosed amount. *See id.*

4. Defendant, Academy Collection Service, Inc. ("Academy"), is a consumer collection agency licensed by the Connecticut Department of Banking, and is a "debt collector" within the meaning of 15 U.S .C. § 1692a(6). *See* Stipulated Facts (2), (3), Joint Trial Memorandum.

5. Academy has an ongoing contractual relationship with Citicorp Credit Services Inc. ("CCSI"), the entity in charge of managing debt collection for Citibank, to collect outstanding accounts. *See* Stipulated Facts (6), Joint Trial Memorandum; Testimony of Amy Levitan; Testimony of Nancy Kearns.

6. In December 1994, CCSI transferred plaintiff's account to Academy to collect on plaintiff's outstanding debt after two previous collection agencies had been unsuccessful in their collection efforts. *See* Stipulated Facts (6), Joint Trial Memorandum.

7. On January 6, 1995, defendant sent plaintiff a computer-generated letter ("January Letter") which read, in part:

If you do not dispute this debt or any portion thereof, you are requested to remit the above stated balance in the enclosed envelope. If you can not (*sic* ) remit the balance, contact us as soon as possible to discuss a repayment plan.

Failure to comply may result in our informing our client that you have refused to cooperate, they may choose to pursue legal action. (*sic* )

*See* Plaintiff's Ex. 1.

8. A second letter, dated February 21, 1995 ("February Letter"), was sent that stated, in relevant part:

Failure to respond may result in our informing our client that you have refused to cooperate. They may choose to pursue legal action to collect this debt. If our client proceeds, and its awarded judgement, (*sic* ) plus fees and court costs, that amount will be added to your current balance.

**\*2** *See* Plaintiff's Ex. 2.

9. Finally, a third letter ("April Letter") was sent on April 13, 1995, informing the plaintiff:

... it is our intent to close our files and inform our client that you have refused to cooperate. Our client may choose to pursue legal action. If they proceed they· will ask that all fees and court costs, plus interest be added to your balance. I suggest that you do one of the following:

1) Consult with your attorney.
2) Inquire though legal aide (*sic* ).
3) Call the attorney general's office/bureau of consumer protection in your state.

Ask any one of the above what the laws in your state will allow our client to recover monies owed to them.

*See* Plaintiff's Ex. 3.

10. Because of his familiarity with litigation against collection agencies, Madonna relayed defendant's letters to his attorney upon receipt. *See* Testimony of Philip A. Madonna.

11. Only after plaintiff forwarded the April Letter to his attorney, did plaintiff's counsel send a letter to Academy insisting that it cease and desist from further communication with plaintiff. *See id.*

12. Madonna's testimony that he feared being sued as a result of the letters and that, prior to receiving the letters form Academy, he was unaware that he could be sued by a creditor to recover a debt, is not credited. *See id.*

13. CCSI manages Citibank's collection efforts for its approximately 3.5 million delinquent accounts. *See* Testimony of Nancy Kearns.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

Page 3

14. CCSI itself has accounts for litigation in all fifty states, placing hundreds of suits in Connecticut alone. *See id.*

15. Alternatively, CCSI may authorize collection agencies such as defendant to institute legal action in Citicorp's name. *See* Stipulated Facts (17), (18); Testimony of Nancy Kearns.

16. Academy places accounts with Connecticut attorneys for suit. *See* Defendant's Ex. I-1 to I-5; Testimony of Nancy Kearns.

17. CCSI authorizes its collection agencies to institute suits against about 1,000 accounts nationwide every month, including numerous suits in Connecticut. *See* Testimony of Nancy Kearns.

18. Under its agreement with CCSI, Academy has the right to recommend suits against delinquent accounts. CCSI then reviews such requests and authorizes suit when appropriate. When Academy seeks suit authorization to begin legal action against an account, it is almost always granted by CCSI. *See* Defendant's Ex. D; Testimony of Nancy Kearns; Testimony of Amy Levitan.

19. On occasion Academy reviews accounts for purposes of deciding whether a referral to an attorney for legal action is warranted. *See* Testimony of Amy Levitan.

20. Out of 153,931 accounts Academy received from CCSI between January, 1993 and October 1995, as of October 16, 1995 Academy could verify only 29 accounts in which authorization to sue was obtained. *See* Stipulated Facts (12),(13), Joint Trial Memorandum.

21. At the time the January Letter, February Letter and April Letter were sent, plaintiff's account had not been individually considered by defendant for suit authorization, nor had authorization to pursue legal action against plaintiff been given by CCSI. *See* Testimony of Amy Levitan.

*3 22. When Academy began the process of at-

tempting to collect plaintiff's debt, it was not aware of any reasons which would have prevented the consideration of the account for further legal action. Academy had not ruled out the possibility of seeking suit authorization on plaintiff's account. *See id.*

23. Academy has no rigid guidelines as to when it will seek authorization to refer for legal action. It maintains no particular minimum amount as a basis for suit, and it regularly brings actions against accounts with both higher and lower balances than that owed by plaintiff. *See* Defendant's Ex. E1-E24; Testimony of Amy Levitan.

24. If defendant's attempts at collection prove unsuccessful, Academy classifies such accounts as "Closed-Uncollectible" and returns them to CCSI, notifying them in a paper report that:
The debtors listed below are being returned to you. They have been removed from our active collection process for reasons indicated. We recommend that you explore the possibility of taking legal action on these accounts.

*See* Plaintiff Ex. 8; Testimony of Amy Levitan.

25. When an agency such as Academy returns an account, CCSI classifies it as "efforts exhausted," "deceased," "bankrupt," "paid" or "settled." CCSI computers process this information and assign uncollected debts to a secondary agency, and thereupon (perhaps) to a third or fourth agency, if accounts remain delinquent. If these further attempts to collect also prove unsuccessful, CCSI usually packages the debts for sale in the open market. *See* Testimony of Nancy Kearns.

26. Under CCSI procedures, the results of Academy's collection attempts for each individual account are entered into CCSI's computers upon receipt. Academy's attached memorandum recommending the possibility of further action is not. *See id.*

27. I credit in full the testimonies of Amy Levitan and Nancy Kearns. On the other hand, I find

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

Page 4

generally unpersuasive the testimony of Philip A. Madonna, particularly with regard to any suggestion that the letters in question surprised him or that they in any way caused him any damage or distress.

28. Academy has ceased using the letters in question pending the outcome of this litigation. *See* Testimony of Amy Levitan.

### DISCUSSION

The instant action is brought under the FDCPA, which states that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff claims that defendant's letters violated 15 U.S.C. § 1692 et seq., and CUTPA, C.G .S. § 42-110a et seq. More specifically, plaintiff alleges (i) that the January Letter "overshadows" the validation notice requirement under 15 U.S.C. § 1692g; (ii) that in each letter, defendant allegedly made false threats of litigation in violation of 15 U.S.C. § 1692e(5) and (10); (iii) that references in each letter to possible legal remedies violated 15 U.S.C. § 1692e(4); and (iv) that defendant's allegedly false and deceitful letters violate CUTPA, C.G .S. § 42-110b. Because the FDCPA is a strict liability statute, proof of one violation is sufficient to support judgment for the plaintiff. *See, e.g., Woolfolk v. Van Ru Credit Corp.,* 783 F.Supp. 724, 725 (D.Conn.1990).

#### A. § 1692g Validation Notice Claim.

**\*4** Plaintiff alleges that defendant's January Letter-stating "if you can not (*sic* ) remit the balance, contact us as soon as possible" and that "[f]ailure to comply may result in our informing our client that you have refused to cooperate, they may choose to pursue legal action" (*sic* )-overshadows and detracts from the consumer's statement of the rights set forth in the letter, and thus, does not effectively convey the notice required by § 1692g.

§ 1692g requires debt collectors soliciting pay-ment to provide the consumer with a detailed validation notice.[FN4] "When a letter contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act."*Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996) (citing *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991)). This statutory requirement is "designed to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." ' *Kizer v. American Credit & Collection, No. B-90-78* (TFGD), 1990 WL 317475, \*2 (D.Conn. Dec. 17, 1990) (quoting S.Rep. No. 382, 95th Cong.2d Sess. 4, 1977 U.S.C.C.A.N. 1695, 1699).

FN4. § 1692g states in relevant part:
(a)... a debt collector shall... send the consumer a written notice containing-
    (1) the amount of the debt;
    (2) the name of the creditor to whom the debt is owed;
    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.
    (4) a statement that if the consumer notifies the debt collector in writing within the thirtyday period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

To determine whether § 1692g has been violated, we consider how the "least sophisticated consumer" would interpret the notice received from the debt collector. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993). This standard serves the dual purpose of "(1) ensur[ing] the protection of all

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

Page 5

consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect[ing] debt collectors against liability for bizarre or idiosyncratic interpretations of collections notices." *Id.* at 1320. Accordingly, the language complained of overshadows or contradicts the § 1692g notice if it would make the least sophisticated consumer uncertain as to his or her rights. *See Equifax,* 74 F.3d at 35.

Plaintiff claims that assertions contained in the January Letter contradict and overshadow the required validation notice of § 1692g. This claim is without merit. The statements to which plaintiff refers do not contradict or "overshadow" the § 1692g notice. The January Letter restates almost verbatim § 1692g's notice requirement .[FN5]The letter advises the consumer three times that he or she has "30 days from receiving this notice" to dispute the debt. This notice appears in the second paragraph of the letter, in the same type-face as the rest of the communication, and in the same font and size. In addition, the statement "contact us as soon as possible" appears in the context of discussing the possibility of a repayment plan.[FN6] This request is wholly unrelated to the 30-day period provided to the consumer in order to dispute the debt. It simply asks the consumer to contact defendant in the event the debt is not disputed. Likewise, the statement that "[f]ailure to comply may result in our informing our client that you have refused to cooperate, they may choose to pursue legal action," merely informs the consumer of what may result if the debt is not disputed within the 30 days established by the statute. This language is not incompatible with the § 1692g notice. Accordingly, because these statements do not detract from or contradict the consumer's notice of his legal rights, much less "overshadow" them, the letter fully complies with the mandate of § 1692g. *See Kizer,* 1990 WL 317475, *2.

FN5. The January Letter states in part: "Unless you notify this office *within 30 days after receiving this notice* that you

dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing *within 30 days from receiving this notice,* this office will obtain verification of the debt or obtain a copy of a judgement (*sic* ) and mail you a copy of such judgement (*sic* ) or verification. If you request this office in writing *within 30 days after receiving this notice,* this office will provide you with the name and address of the original creditor, if different from the current creditor." Plaintiff's Ex. 1 (emphasis added).

FN6. The fourth paragraph of the letter states: "*If you do not dispute this debt* or any portion thereof, you are requested to remit the above stated balance in the enclosed envelope. If you can not (*sic* ) remit the balance, contact us as soon as possible to discuss a repayment plan." Plaintiff's Ex. 1 (emphasis added).

*5 The cases relied on by plaintiff provide little support for his claim that the January Letter violated § 1692g. In both *Equifax* and *Graziano,* the Court held that the agency's debt collection letter overshadowed the § 1692g notice. In *Equifax,* the letter at issue presented the consumer with "two different and conflicting statements." *Equifax,* 74 F.3d at 34. While the letter included the § 1692g notice, the letter also contained the statement that "[i]f you do not dispute this claim (see reverse side) and wish to pay it *within the next 10 days* we will not post this collection to you file." *Id.* at 34 (emphasis added) (alteration in the original). A similar letter was at issue in *Graziano.* In that case, while including the § 1692g notice requirement, the collection letter threatened legal action unless the debt was not resolved in ten days. *See Graziano,* 950 F.2d at 109. In both cases, "[w]hen the least sophisticated consumer reads such a communication, she could readily believe-despite the inclusion of the validation notice-that were she to take any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

Page 6

course other than payment to [to the collection agency] within 10 days, it would permanently affect her credit record." *Equifax,* 74 F.3d at 34. Both courts held that this "juxtaposition of two inconsistent statements [renders] the statutory notice invalid under § 1692g." *Graziano,* 950 F.2d at 111; *see also Equifax,* 74 F.3d at 34 (citing *Graziano).* No such juxtaposition is present in the January Letter. The letter contains no other deadline to contradict the § 1692g notice or confuse consumers regarding the 30-day period the Act provides for consumers to dispute their debts.

In sharp contrast with these cases, in *Terran v. Kaplan,* a consumer received a debt collection letter stating: "Unless an immediate telephone call is made... we may find it necessary to recommend to our client that they proceed with legal action." *Terran,* 109 F.3d 1428, 1430 (9th Cir.1997). The Court found that in this collection letter

[t]he request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt. This language simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of his debt.

*Id.* at 1434.

The January Letter informs the consumer that the account was placed for collection; that the consumer has certain rights to dispute or seek verification of the debt; that if the debt is not disputed, there is a request for payment; and if a lump sum payment is not possible, that he or she may contact the agency to discuss a repayment plan. It makes no demand for immediate payment; it establishes no deadline which arguably could have confused the consumer as to the 30-day dispute period; and it does not make threats which may cause a consumer to misunderstand or ignore his statutory rights. The request for the consumer to contact defendant in the January Letter, like the request to telephone in *Terran,* merely "encourages the debtor to communicate

with the debt collection agency," *id.,* without threatening the debtor. Accordingly, I conclude that defendant's January Letter does not violate 15 U.S.C. § 1692g.

B. *False or Misleading Representations Under § 1692e.*

*6 Plaintiff next claims that the three collection letters sent by defendant threatened action which was not intended to be taken, in violation of § 1692e(4) and § 1692e(5), and used false and deceptive representations to collect the debt owed, in violation of § 1692e(10).

*1. Advising Creditor of Consumer's Refusal to Cooperate.*

All three letters sent by defendant contained the following statement: "Failure to comply may result in our informing our client that you have refused to cooperate." Plaintiff suggests that this statement is false and misleading because Academy never actually uses the words "refused to cooperate" in its report to CCSI. Instead, Academy merely labels the accounts as "uncollectible ." Accordingly, plaintiff argues, this alleged threat violates § 1692e(5) and § 1692e(10). However, I agree that "in an 'uncollectible' account the debtor has, at a minimum, refused to cooperate. Consequently we view this distinction as not being sufficiently material to constitute a false representation...."*Artese v. Academy Collection Service, Inc.,* 3:95CV874 (GLG) at 5 (D.Conn. July 31, 1996).

Plaintiff maintains that this conclusion is mistaken, pointing out that the *Artese* court was unaware of CCSI's new computer system. Since CCSI's new computer system was put in place a few years ago, when CCSI receives the results of an agency's collection efforts, they are entered into the computer without being individually considered by CCSI personnel. Hence, the argument goes, CCSI never directly received Academy's notifications regarding the outcome of their collection efforts.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

Plaintiff's argument is without merit. Plaintiff offers no proof to support the claim that the *Artese* court was unaware of the computer process. In any event, at the trial of the instant action plaintiff offered no evidence suggesting that Academy was aware of CCSI's new procedures at the time the collection letter was mailed. Finally, the fact that an agency's collection results are fed directly into a creditor's computer, without human intervention, does not make any less true the fact that Academy sent notices to CCSI informing it of a consumer's refusal to cooperate.

Accordingly, I find that in the circumstances here presented, the statement that "[f]ailure to comply may result in our informing our client that you have refused to cooperate" does not violate § 1692e(5) or § 1692e(10).

*2. Possibility of Law Suit.*

Plaintiff maintains that defendant's multiple references to the possibility that the creditor "may choose to pursue legal action," when it had no specific knowledge whether the creditor had affirmatively decided to sue him, is a threat of unintended action, and a false statement in violation of § 1692e(5) and (10). Based on the circumstances presented in the record before me, I conclude that the statements at issue do not violate the FDCPA § 1692e.

"In order to establish a violation of 15 U.S.C. § 1692e(5) because of the indication in the communication complained of that nonpayment might lead to suit, plaintiff would have to show that a lawsuit-a routine debt collection device where negotiations fail-could be ruled out." *Sluys v. Hand,* 831 F.Supp. 321, 327 (S.D.N.Y.1993); *See also Tsenes v. Trans-Continental Credit and Collection Corp.,* 892 F.Supp. 461, 465 (E.D.N.Y.1995). As noted in the Findings of Fact, *supra,* CCSI has accounts for litigation in all fifty states, and has authorized the placement of numerous suits in Connecticut alone. *See* Findings of Fact, ¶ ¶ 14, 15, 17. Under its

agreement with CCSI, Academy can recommend suits against delinquent accounts. *Id.,* ¶ 18. Furthermore, when such authorization is sought, it is almost always granted by CCSI. *Id.* Academy has no rigid standard for deciding when to seek suit authorization and has sought such authorization for accounts with amount less than that owed by plaintiff. *Id.,* ¶ 23. Finally, Academy was not aware of any reasons which would have prevented the consideration of plaintiff's account for further legal action. *Id.,* ¶ 22. When the letters were mailed, the option to sue had certainly not been ruled out. *Id.* Accordingly, the statement present in all three letters sent by defendant does not contravene § 1692e(5) of the FDCPA.

*7 Far from threatening legal action, the statement that the creditor "*may* choose to pursue legal action," indicates that legal action is an option available to the creditor, who *may* indeed choose to take advantage of it. *Cf. Knowles v. Credit Bureau of Rochester,* No. 91-CV14S 1992 WL 131107 at *2 (W.D.N.Y. May 28, 1992); *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 178 (W.D.N.Y. May 28, 1988). At issue in *Knowles* was a collection agency's letter which stated, in more direct and threatening language than that contained in any of Academy's letters, that "FAILURE TO PAY WILL LEAVE OUR CLIENT NO CHOICE BUT TO CONSIDER LEGAL ACTION." *Knowles,* 1992 WL 131107, at *2. In *Knowles,* the district court found that "[a]t most, the language at issue here threatened that the creditor will have to consider legal action. No action of any kind is threatened by defendant collection agency. Therefore... the language at issue does not violate the statute [ § 1692e]." *Id.* In *Riveria,* the collection letter stated: "IT IS UNFORTUNATE THAT YOU DO NOT SEEM TO CARE, AND YOU LEAVE US NO CHOICE BUT TO ADVISE YOUR CREDITOR THAT YOU HAVE IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (*sic* )." *Riveria,* 682 F.Supp. at 178. The court held that "[t]here was no threat to take legal action, but

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

rather a statement that the client would be advised that legal action may be necessary." *Id.* Finally, the court in *Woolfolk* held that the letter at issue "clearly states that 'legal action will be recommended' and, hence, is not a representation that the debt collector intends to or has the ability to litigate." *Woolfolk,* 783 F.Supp. at 727. As in the cases examined above, defendant's letter does not violate § 1692e(5) since no legal action is threatened by Academy.

Moreover, because the statement that the creditor "may choose to pursue legal action" merely informs the consumer of an option that is indeed clearly available to the creditor to recover the debt, it is in no way false or misleading, and thus, does not run afoul of § 1692e(10). Even the least sophisticated consumer would understand such a statement to mean that because his debt has remained unpaid, a suit may be brought by the creditor to ensure collection of the money owed. *See Riveria,* 682 F.Supp. at 178-179. We do well to recall that, in crafting the least sophisticated consumer standard, the Court of Appeals "carefully preserved the concept of reasonableness.... Indeed, courts have consistently applied [this standard] in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Clomon,* 988 F.2d at 1319. Accordingly, I conclude that the statement at issue here, informing plaintiff of the possibility of suit, in the circumstances presented, does not violate § 1692e(10).

Plaintiff would have this court hold that unless a creditor has already decided to sue in a particular case, a collector is prohibited from making any mention of even the possibility of suit. This proposition finds no support in the statute or the case law.

**\*8** Debt collection, like law enforcement, must be both fair and effective in order to be either. Permitting debtors to avoid payment of legitimate debts passes the costs of their delinquency on to creditors and others with whom the creditors do business. It would be counterproductive to penalize a debt collector for suggesting that steps which legally could be taken might in fact be taken.

> *Sluys,* 831 F.Supp. at 326.

Plaintiff's reliance on *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2d Cir.1993) and *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir.1989), is misplaced. In both *Bentley* and *Pipiles,* the letters sent to the consumer suggested that action had already been taken by the agency with regard to the consumer's account, and implied that legal action was imminent.[FN7] In holding that such a letter violated § 1692e, the *Bentley* court noted that the defendant collection agency was "not authorized...'to proceed with whatever legal means is necessary to enforce collection' as represented in the first letter." *Bentley,* 6 F.3d at 62. Furthermore, it did "not make the decision whether to initiate legal proceeding in matters involving [the creditor]; never recommend[ed] legal proceedings unless its advice [was] solicited from its clients; [and did] not employ attorneys admitted to practice in the state of Connecticut...."*Id.* None of these facts are true of Academy in the present case. Similarly in *Pipiles,* the Court of Appeals found a § 1692e(5) and (10) violation because the letter at issue there implied "that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Pipiles,* 886 F.2d at 25. Yet, even with the language in the *Pipiles* letter, the Court of Appeals found the issue to be a "close question." *Id.* In sum, neither *Bentley* nor *Pipiles* supports plaintiff's sweeping proposition that no mention of legal action can be made unless such action has already been decided upon.

> FN7. The *Bentley* letter read in part: "YOUR CREDITOR IS NOW TAKING THE NECESSARY STEPS TO RECOVER THE OUTSTANDING AMOUNT OF $483 .43. THEY HAVE INSTRUCTED U.S. TO PROCEED WITH WHATEVER LEGAL MEANS IS NECESSARY TO ENFORCE COLLECTION." *Bentley,* 6 F.3d at 61.
> The *Pipiles* letter stated in relevant part:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"Notice Is Hereby Given That This Item Has Already Been Referred For Collection Action;" "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full;" and "Pay This Amount Now If Action Is To Be Stopped." *Pipiles,* 886 F.2d at 25.

Plaintiff also relies on Federal Trade Commission ("FTC") staff commentaries and decisions to further support his claim that the possibility of legal action may not be mentioned under § 1692e(5) unless such action has been decided upon at the time the letter is sent. In *Trans World Accounts, Inc. v. Federal Trade Commission,* 594 F.2d 212 (9th Cir.1979), the FTC maintained that collectors should not refer to the possibility of legal action unless a lawsuit was the ordinary response to nonpayment in more than half of the instances of nonpayment. *Id.* at 216. Nevertheless, the Court of Appeals held that such an "interpretation of the meaning of the word 'may' is overly restrictive because it attributes to the word a statistical meaning counter to common sense and usage." *Id.* at 216.

To refer to the [p]ossibility of litigation, when at the time such [p] ossibility exists, is not, I believe, a deceptive practice. To suggest that it is, except when the chance of litigation is slightly better than even, is to circumscribe truth unreasonably rather than to extirpate falsehood. I am not convinced that Congress so intended to censor truth in legislation designed to protect the consumer from falsehood.

*9 *Id.* at 217 (Sneed, J., concurring).

In contrast with the proposition which plaintiff would have us adopt as a matter of law, stand a number of decisions by courts across this Circuit which have upheld debt collection letters containing language less subtle and more overbearing than that found in the letters sent by defendant in the instant action. Cf. *Robinson v. Transworld Systems, Inc.,* 876 F.Supp. 385, 392 (N.D.N.Y.1995) (court dismissed claims under FDCPA relating to collection letter warning of "PROTRACTED AND UNPLEASANT COLLECTION EFFORT" if timely

payment was not made, and alluded to "PROBLEMS AND POSSIBLE CONSEQUENCES CONNECTED WITH NONPAYMENT OF A LEGITIMATE DEBT"); *Knowles,* 1992 WL 131107 at *2 (letter stated "FAILURE TO PAY WILL LEAVE OUR CLIENT NO CHOICE BUT TO CONSIDER LEGAL ACTION;" summary judgment for defendant granted); *Riveria,* 682 F.Supp. at 178 (the Court held that the statement "... YOU LEAVE U.S. NO CHOICE BUT TO ADVISE YOUR CREDITOR THAN THAT YOU HAVE IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (sic )," did not violate § 1692e(5) or § 1692e(10)).

Plaintiff also maintains that the suggestion in the April Letter that the consumer consult with his attorney, legal aid or the attorney general's office to ask about "what laws in your state will allow our client to recover monies owed to them," *see* Findings of Fact, ¶ 9, is false and deceptive and a threat of action not intended to be taken, contrary to § 1692e(5) and (10). For many of the same reasons discussed above, I find this claim to be lacking in merit. First, the statement does not suggest that a lawsuit is imminent. In fact, the assertion follows the statement that "our client *may* choose to pursue legal action. *If they proceed,* they will ask that all fees and court costs be added to your balance." Plaintiff's Ex. 3 (emphasis added). It does not suggest that legal action *will* be taken, but only refers to remedies available to the creditor if such action is pursued. Even if one were to interpret this statement as advising of a possible legal action-as comparable to the assertion that the creditor "may choose to pursue legal action"-it is enough to say that a lawsuit was indeed always a viable alternative in the circumstances presented by plaintiff's unpaid account, even if not necessarily a likely one. The fact that a creditor may sue on an unpaid debt is a possibility which would be understood even by the least sophisticated consumer. Accordingly, the statement does not violate § 1692e.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

*3. Statement of Legal Consequences.*

Plaintiff also claims that the statement in the February Letter and April Letter, that if the creditor decides to sue it "will ask that legal fees and court costs, plus interest be added to your balance," is an unlawful recital of legal consequences under § 1692e(4) and (5). The FDCPA § 1692e(4) prohibits the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

*10 Defendant's letters at no time even hint that nonpayment would lead to arrest or seizure, garnishment or sale of property or wages. The letters merely state the lawful remedies the creditor has available in the event of an adverse judgment against the consumer and, in these circumstances, do not violate § 1692e(4). Similarly, plaintiff offered no evidence at trial to suggest that either the creditor or defendant had no intention to seek fees and court costs, plus interest, in the event of a lawsuit. This should surprise no one, since this step is readily taken by prevailing parties in a lawsuit. Accordingly, plaintiff has not shown that the statement above violates either § 1692e(4) or § 1692e(5).

In the February Letter, Academy also warned that if "our client proceeds, and is awarded judgement (*sic* ), plus fees and court costs, that amount will be added to your current balance." This, plaintiff argues, suggests that if the creditor's legal action is successful, the judgment, plus fees and court costs, would be *added* to the debt the consumer already owes. This, he maintains, is misleading because it would mean a doubling of the debt owed, plus whatever costs and legal fees are incurred, when all the creditor would be entitled to after a successful action is the debt initially owed, plus fees and court costs. Because the least sophisticated consumer could mistakenly read the statement to mean that a judgment award, plus fees and costs, would be added to the debt already owed in the event of a judgment against him, the statement is misleading. The statement is thus in violation of § 1692e(10), which forbids the use of any false representation to collect debts.

C. *Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b.*

Plaintiff alleges that defendant's deceptive letters violated the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b, a claim this court considers under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367.

To state a claim under CUTPA, plaintiff must demonstrate that he suffered "any ascertainable loss of money or property, real or personal," due to an unfair or deceptive practice. § 42-110g(a). While the ascertainable loss is not necessarily equivalent to a precise figure of actual damages, this requirement "is a threshold barrier which limits the class of persons who may bring a CUTPA action." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 815 (Conn.1981); *See also Maguire v. Citicorp Retail Services, Inc.*, No. 3:95CV2113 (AHN), 1997 WL 280540 *5 (D.Conn. May 19, 1997). Under CUTPA there is no need to allege or prove the amount of the loss. *Hinchliffe*, 440 A.2d at 814. However, ascertainable loss has been interpreted by the Connecticut Supreme Court as encompassing losses that are "measurable even though the precise amount of the loss is not known." *Id.; see also Williams v. Monterey Motors*, 3:96CV00310 (GLG) (D.Conn. July 11, 1996).

*11 "The burden of proving damages is on the party claiming them." *Maguire*, 1997 WL 280540 at *6 (quoting *Gargano v. Hayman*, 203 Conn. 616, 525 A.2d 1343, 1346 (Conn.1987)). In this case, plaintiff has failed to specifically allege or prove *any* loss or injury suffered as a result of receiving Academy's letters. Only after the trial, in a post-trial memorandum, does plaintiff suggest a loss of a "minimal amount for postage and envelopes" used

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
**(Cite as: Not Reported in F.Supp.)**

Page 11

to mail "the offending letter to his counsel (expense of about $1.00)." *See* Plaintiff's Post Trial Memorandum (filed July 14, 1997) at 6. Under CUTPA, "the private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co.,* 298 Or. 127, 690 P.2d 488, 494 (Or.1984) (citing *Hinchliffe* ). "While the court in [[*Hinchliffe* ] did not require that the plaintiff to prove a specific amount of damages, it did require that plaintiff show the existence of some loss or injury." *Maguire,* 1997 WL 280540 at \*6. After all, "CUTPA is not designed to afford a remedy for trifles." *Hinchliffe,* 440 A.2d at 814. Yet, even in his Post Trial Memorandum plaintiff offers not one scintilla of evidence to support his claim of damages caused as a result of defendant's letters. Thus, plaintiff has not met "his burden under CUTPA of offering evidence that any ascertainable loss of money or property was sustained as a result of the alleged misrepresentations." *Consolidated Marketing Corp. v. Carol Cable Co.,* No. H81-262(JAC), 1985 WL 5956 at \*2 (D.Conn. Nov.20, 1985) (internal quotation marks omitted).

While it is "the intention of the legislature that this [statute] be remedial and be so construed,"C.G.S. § 42-110b(d), it does not follow that damages should be awarded when no loss of any kind has been alleged, much less proven. Accordingly, plaintiff's claim under CUTPA for the alleged false statement fails because he has not met the threshold test that he suffered "ascertainable loss."

Assuming, *arguendo,* that plaintiff's allegation, in his Post Trial Memorandum, that he spent about $1.00 to mail the letters to his counsel is sufficient to demonstrate an ascertainable loss for purposes of CUTPA, I conclude that plaintiff would, in any event, only be entitled to $1.00 in damages under CUTPA.[FN8] Under CUTPA, a plaintiff is entitled to receive actual damages in the event of a violation of the act. *See*C.G.S. § 42-110g(a). Furthermore, a court "may, in its discretion, award punitive dam-

ages and may provide such equitable relief as it deems necessary or proper." *Id.* A court may also award attorney's fees for a violation of CUTPA. *See, e.g., Saturn Construction Co., Inc. v. Premier Roofing Co., Inc.,* 238 Conn. 293, 680 A.2d 1274,1283-84 (Conn.1996).

> FN8. Assuming that plaintiff has demonstrated an ascertainable loss, I conclude that he has established a violation of CUTPA. Under CUTPA,
>
> a court must consider (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
>
> *Boulevard Associates v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1038 (2d Cir.1995) (alterations in original) (internal quotation marks omitted).
>
> Because plaintiff has shown a violation of the FDCPA, I conclude that, assuming plaintiff has shown an ascertainable loss, he has also demonstrated a violation of CUTPA.

I conclude that, assuming plaintiff has demonstrated an ascertainable loss, plaintiff would be entitled to $1.00 in compensatory damages. I conclude that plaintiff would not, however, be entitled to any damages for emotional distress, as plaintiff presented no credible evidence of any such distress. *See* Findings of Fact, ¶¶ 12, 27. Moreover, I do not believe that punitive damages are warranted in the circumstances of this case, for substantially the reasons that I do not believe "additional damages" are warranted under the FDCPA. *See infra.* Finally, I conclude that injunctive relief is not necessary under the circumstances of this case, particularly given the fact that the defendant has ceased using the challenged letters pending the outcome of this litigation. *See* Findings of Fact, ¶ 28.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)
(Cite as: Not Reported in F.Supp.)

D. *Damages.*

*12 Under § 1692k(a),
any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of ... any actual damage sustained by such person as a result of such failure ..., such additional damages as the court may allow, but not exceeding $1,000 ..., and the costs of the action together with a reasonable attorney's fee as determined by the court."

In determining the amount of damages, we are to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. § 1692k(b)(1). Since the FDCPA is a strict liability statute, a finding of one violation is sufficient to support judgement for the plaintiff. *See, e.g., Woolfolk,* 783 F.Supp. at 725.

In the instant case, plaintiff failed to present any credible proof of any actual damages resulting from defendant's letters. For this reason no actual damages will be awarded. In addition, I conclude that plaintiff is not entitled to "additional damages" since defendant did not intend to deceive or harass, and I have found that plaintiff suffered no surprise, damage or distress as a result of receiving these letters. *See* Findings of Fact, ¶ 27. The violation found in defendant's February Letter occurred only once as far as plaintiff is concerned. In addition, in a subsequent mailing (the April Letter) defendant corrected the February Letter's error by accurately stating that if the creditor is successful in a legal action "they will ask that all fees and court costs, plus interests be added to your balance." Because the violation in this case consists of an ambiguity in one sentence in a single letter sent by defendant-corrected in a subsequent letter-and because no credible evidence was presented to show that the noncompliance was intentional, the nature of defendant's noncompliance does not warrant "additional damages." "Because the FDCPA was violated, however,

the statute requires the award of costs and reasonable attorney's fees, " *id.*(citing *Emanuel v. American Credit Exch.,* 870 F.2d 805, 809 (2d Cir.1989)), upon application by plaintiff.

## CONCLUSION

For the reasons stated above, a judgment of liability shall enter for plaintiff on one claim under § 1692e(10), but no damages shall be paid by defendants to plaintiff in the absence of proof of actual damages or any justification for "additional damages." Having prevailed on the question of liability, plaintiff may file an application for an award of costs and attorney's fees, by no later than September 12, 1997.

It is so ordered.

Entered 1997 in New Haven, Connecticut.

D.Conn.,1997.
Madonna v. Academy Collection Service, Inc.
Not Reported in F.Supp., 1997 WL 530101 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 131107 (W.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

▷

Knowles v. Credit Bureau of Rochester, Div. of
Rochester Credit Center, Inc.
W.D.N.Y.,1992.
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.
Clementine KNOWLES, Plaintiff,
v.
CREDIT BUREAU OF ROCHESTER, DIVISION
OF ROCHESTER CREDIT CENTER, INC., De-
fendant.
No. 91-CV-14S.

May 28, 1992.

Robert P. Scheffer, UAW-GM Legal Services Plan,
Lockport, N.Y., for plaintiff.
Michael S. Schnittman, Rochester, N.Y., for de-
fendant.

DECISION AND ORDER

SKRETNY, District Judge.

*1 This is an action for actual and statutory
damages for violations of the Fair Debt Collection
Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et
seq. Defendant Credit Bureau of Rochester moves
for summary judgment pursuant to Fed.R.Civ.P.
56(c) and for an award of attorney's fees and costs
pursuant to 15 U.S.C. § 1692k(a)(3).

In support of its motion for summary judgment,
defendant submits the affidavit of Richard Glen
Curtis, Esq., sworn to on March 7, 1991, the affi-
davit of Gregory Helfer, sworn to on February 28,
1991, a memorandum of law dated March 6, 1991
and a Statement of Material Facts Not in Dispute.
In support of its motion for attorney's fees and
costs, defendant submits the affidavit of Richard
Glen Curtis, Esq., sworn to on May 30, 1991, and a
supplemental memorandum of law dated May 30,
1991 ("Defendant's supp. memo").

In opposition to defendant's motions, plaintiff
submits the affidavit of Robert P. Scheffer, sworn

to on May 2, 1991 ("Scheffer aff.") and a memor-
andum of law, filed June 13, 1991 ("plaintiff's
memo").

For the reasons articulated below, defendant's
motion for summary judgment is granted, and de-
fendants motion for attorney's fees and costs is
denied.

FACTS

Plaintiff alleges that defendant "violated 15
U.S.C. § 1692(g)(5), and by threatening to take an
action which was not intended to be taken."
(Complaint, ¶ 9(a)).FN1 The following material
facts are undisputed.

On December 27, 1989, Highland Cardiology
Services, seeking payment of an alleged debt, re-
ferred plaintiff's account to defendant for collec-
tion. Defendant mailed a Notice and Demand for
Payment to plaintiff, containing on the back valida-
tion language required by § 1692g. Defendant
mailed a second notice, dated January 16, 1990,
containing the following language: "FAILURE TO
PAY WILL LEAVE OUR CLIENT NO CHOICE
BUT TO CONSIDER LEGAL ACTION."

The parties' attorneys exchanged correspond-
ence in which plaintiff's attorney described the al-
leged violations of the FDCPA and defendant's at-
torney denied the violations. This action followed.

DISCUSSION

1. Summary Judgment

Fed.R.Civ.P. 56(c) mandates summary judg-
ment where the record before the court "shows that
there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a
matter of law." The court must draw all reasonable
inferences in favor of the nonmoving party. Adickes

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1992 WL 131107 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).

Plaintiff alleges that the language in the January 16 letter quoted above violated 15 U.S.C. § 1692e, which makes unlawful a debt collector's use of any "... false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, subsection (5) states that "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" is a violation of the section. The statement contained in the January 16 letter from defendant to plaintiff is the only alleged violation upon which plaintiff bases her claim.[FN2] I find that even construed in a light most favorable to the plaintiff, this statement threatens no action whatsoever on the part of the defendant, and therefore, does not violate § 1692e(5).

*2 Defendant argues that this case is like *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174 (W.D.N.Y.1988), in which the plaintiff also alleged a violation of 15 U.S.C. § 1692e(5). The allegedly violative language in *Riveria* read:
IT IS UNFORTUNATE THAT YOU DO NOT SEEM TO CARE, AND YOU LEAVE US NO CHOICE BUT TO ADVISE YOUR CREDITOR THAT YOU HAVE IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (sic).

Reasoning that the key word in this statement was "advise," the court held that there was no violation of § 1692e(5) because "there was no threat to take legal action, but rather a statement that the client would be advised that legal action may be necessary." *Riveria, supra,* 682 F.Supp. at 148.

Plaintiff attempts to distinguish *Riveria* by focusing on defendant's use of the words "no choice" in the notice at issue in this case. She argues that this implies an intended action, not mere consideration of action, and therefore, constitutes a threat. The existence of such a threat would create an issue of fact as to whether the defendant actually intended to do as it threatened, thereby precluding summary judgment. However, plaintiff fails to note that the notice in *Riveria* also contained the words "no choice," to which the court attached no significance. Therefore, I do not find that allegedly violative language in the January 16 letter constituted a threat because defendant used the words "no choice."

Moreover, the statutory language compels this same result. The section makes unlawful the use of false or misleading representations by *debt collectors.* At most, the language at issue here threatened that the *creditor* will have to consider legal action. No action of any kind is threatened by defendant collection agency. Therefore, insofar as the purpose of the FDCPA is "... to eliminate abusive debt collection practices by *debt collectors,*" 15 U.S.C. § 1692(e) (emphasis added), the language at issue does not violate the statute.

Plaintiff also cites *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2nd Cir.1989), as support for the proposition that a vague phrase can constitute a threat in violation of § 1692e(5). (plaintiff's memo, at 5). There, the allegedly violative language read: "Notice Is Hereby Given That This Item Has Already Been Referred For Collection;" "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full;" and "Pay This Amount Now If Action Is To Be Stopped." *Pipiles, supra,* 886 F.2d at 24. The court found a violation of § 1692e(5), concluding that:
The clear import of the language, taken as a whole, is that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment.

*Id.,* 886 F.2d at 25 (emphasis in original).

In contrast, defendant in this case threatened no action. Unlike *Pipiles,* the notice herein did not warn that "legal action has already been taken or is about to be initiated." Rather, the notice informed plaintiff that the creditor will have to consider legal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1992 WL 131107 (W.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

action if payment is not made.

**\*3** Accordingly, defendant's motion for summary judgment is granted.

2. *Attorney's Fees and Costs*

15 U.S.C. § 1692k(a)(3) allows the court, in its discretion, to award reasonable attorney's fees to a successful defendant in an action brought under any provision of the FDCPA, if the action was brought in bad faith and for the purpose of harassment. Defendant alleges that this action was brought in bad faith because defendant's attorney made a good faith effort to demonstrate defendant's compliance with the FDCPA to plaintiff and her counsel prior to commencement of the action. (Defendant's supp. memo, at 1-2)

I find that this is insufficient to show that plaintiff brought this action in bad faith and for the purpose of harassment. "In the absence of any evidence that the plaintiff believed his action to be without merit or was motivated purely by a desire to harass [the defendant], sanctions under this provision are not warranted." *Mendez v. Apple Bank Savings,* 143 Misc.2d 915, 541 N.Y.S.2d 920, 924 (N.Y. City Civ.Ct.1989). Accordingly, defendant's motion for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) is denied.

*ORDER*

IT HEREBY IS ORDERED, that defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted.

FURTHER, that defendant's motion for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) is denied.

FURTHER, that the Clerk of the Court is directed to enter judgment in accordance with this Decision and Order.

SO ORDERED.

FN1. Plaintiff's memorandum of law states that the complaint contains a typographical error, and that it should not allege a violation of § 1692(g)(5), but rather, a violation of § 1692e(5). (Plaintiff's memo, at 2-3). Therefore, plaintiff's claim in this action is that the language of the January 16, 1990 letter from defendant to plaintiff, discussed *infra,* violates § 1692e(5) because it constitutes a "... threat to take any action that cannot legally be taken or that is not intended to be taken."

FN2. Plaintiff argues that her complaint alleges more than a single violation of the FDCPA because paragraph 9 of the complaint states that "Defendant's violations include but are not limited to" the specified violation. (Scheffer. aff., ¶ 6). However, this generalized allegation fails to comply with Fed.R.Civ.P. 8(a)(2).

W.D.N.Y.,1992.
Knowles v. Credit Bureau of Rochester, Div. of Rochester Credit Center, Inc.
Not Reported in F.Supp., 1992 WL 131107 (W.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 3065588 (E.D.N.Y.)
(Cite as: Slip Copy)

Page 1

Khon v. Paul Michael Marketing Service, Inc.
E.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Aron KHON, Plaintiff,
v.
PAUL MICHAEL MARKETING SERVICE, INC.,
Defendant.
No. CV05-2771(SJF)(MDG).

Oct. 27, 2006.

Adam Jon Fishbein, Attorney at Law, Woodmere,
NY, for Plaintiff.
Arthur Sanders, Spring Valley, NY, for Defendant.

OPINION & ORDER

FEUERSTEIN, J.
*1 Aron Khon (plaintiff) commenced this action against Paul Michael Marketing Service, Inc. (defendant) on June 9, 2005. Defendant now moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. For the reasons stated herein, defendant's motion is denied.

I. Background

A. Factual Background

Plaintiff commenced this class action, on behalf of himself and other similarly situated, against the defendant, a consumer debt collection agency, seeking damages and attorney's fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA or the Act). (Compl.¶¶ 5-6, 12). On November 15, 2004, defendant attempted to collect a $124.00 debt allegedly owed to Mount Sinai Center for Clinical Labs (creditor).(Id. ¶¶ 9-10).

Plaintiff complains that two sentences in the letter constitute "false threats and deceptive practices" in violation of Sections 1692e(5) and

1692e(10) of the FDCPA. (Id. ¶¶ 11-12). The collection letter contains the following language:

If said sum is not received immediately, we will have no alternative but to advise our client of your continued refusal to pay the amount due. Our client will then have to choose whether or not to take legal action on this claim.

(Compl., Ex.). Plaintiff alleges that this language implies a threat of legal action against the consumer, but that defendant has no intention to bring legal action and presumably has no knowledge as to whether the creditor will bring action either. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, dated Nov. 14, 2005 [Pl.'s Mem.], at 5-7). Plaintiff contends that there is a strong likelihood that the creditor never initiates legal action for such small debts and that plaintiff has not had the opportunity to show whether the creditor actually intended or considered whether to commence a lawsuit in this case. (Id. at 5).

Defendant concedes that violations of the FDCPA have been found where the collection letter threatens legal action that the debt collector did not intend to take. (Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment on the Pleadings, dated Oct. 12, 2005 [Def's Mem.], at 11). In this case, however, defendant contends that the language of the collection letter is "not susceptible to more than one reasonable interpretation" and that the "letter contains no contradictory or threatening language, which could be subject to misinterpretation by the plaintiff. There are no threats of legal action or statements that the matter was referred to a lawyer for litigation."(Id. at 11-12). Defendant fails to address plaintiff's argument that the language could suggest that legal action is a possible consequence of failure to pay when, in practice, the debt collector and/or the client never take such action for a debt of this amount.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## II. Discussion

### A. Federal Rules of Civil Procedure 12(c)

*2 Rule 12(c) of the Federal Rules of Civil Procedure states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."When deciding a motion under Rule 12(c), the court should use the same standard as that applicable to a motion under Rule 12(b)(6), "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party."*D'Alessio v. New York Stock Exch., Inc.,* 258 F.3d 93, 99 (2d Cir.2001) (internal citations and quotations omitted). The court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. FDCPA § 1692e(5) and (10)

Section 1692e of the FDCPA prohibits debt collectors from using "false, deceptive, or misleading representation or means in connection with the collection of any debt."15 U.S.C. § 1692e. In determining whether a debt collection letter violates the Act, courts in the Second Circuit apply the "least sophisticated consumer" test. *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993)."The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. The standard is consistent with the norms that courts have traditionally applied in consumer-protection law."*Id.* Sections 1692e(5) and (10) prohibit a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken," and from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer," respectively. "Deceptiveness," within the meaning of Section 1692e, includes ambiguity, and a collection notice is deceptive if it is "reasonably susceptible to an inaccurate reading."*Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir.1996).

Plaintiff alleges that defendant's letter, which states that in the event payment is not received "immediately ... [o]ur client will then have to choose whether or not to take legal action on this claim," is a threat in violation of the Act because defendant, and defendant's client, have "no intention to bring legal action."(Pl.'s Mem. at 7). Courts look to the facts and circumstances of the case in determining wether the language can be interpreted as threatening legal action in violation of the FDCPA.

If the debt collector is not authorized by its client to pursue legal action, or if legal action was never intended to be taken, threats of legal action have been found to violate Section 1692e(5).See*Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62-63 (2d Cir.1993) (finding that the statement, "[the creditor has] instructed us to proceed with whatever legal means is necessary to enforce collection" violated the Act because the contract between the debt collector and the creditor explicitly provided that prior written authorization was required from the creditor before the collection agency could commence litigation); *Sluys v. Hand,* 831 F.Supp. 321, 326-27 (S.D.N.Y.1993) ("If a step threatened by a debt collector 'is not intended to be taken [by the creditor],'15 U.S.C. § 1692e(5) may be violated.").

*3 In order to prevail, plaintiff must establish that the possibility of a lawsuit could be "ruled out." *Sluys,* 831 F.Supp. at 327. However, because plaintiff alleges that defendant and its client have no intention of bringing such action, and defendant has failed to provide a dispositive contract with its client or proof of prior legal action on similar amounts, the complaint is sufficient to survive a motion for judgment on the pleadings. See*Failla v.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3065588 (E.D.N.Y.)
**(Cite as: Slip Copy)**

*Cohen,* 03 CV 1262, 2005 U.S. Dist. LEXIS 17434, at *5 (E.D.N.Y. Mar. 10, 2005); *Kapeluschnik v. Leschack & Grodensky, P.C.,* 96 CV 2399, 1999 U.S. Dist. LEXIS 22883, at *23 (E.D.N.Y. Aug. 25, 1999).

III. Conclusion

For the reasons stated herein, defendant's motion to dismiss on the pleadings is denied.

SO ORDERED

E.D.N.Y.,2006.
Khon v. Paul Michael Marketing Service, Inc.
Slip Copy, 2006 WL 3065588 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.